LESLIE GARNETT, Respondent, v. GEORGE W. BERRY *et al.*, Appellants.

### December 18, 1876.

1. A husband, as such, has no power, by a building contract, to create a liability of his wife's estate to a mechanic's lien. He can do so only as her agent.

2. To subject an estate to a mechanic's lien, through the intervention of any person other than the owner, such other person must not only have assumed to act for the owner, but must have been authorized to do so, either by previous appointment or by subsequent ratification. The mere knowledge and approbation of the owner do not amount to either appointment or ratification.

3. Authorization or ratification of a contract to build a house on the wife's lot will not be presumed from the fact that the house was to be a residence for the wife and children, with the husband.

4. A mechanic's lien cannot be given to sub-contractors for an amount greater than the contract price of the whole work. But a sub-contractor cannot be deprived of his lien rights because the builder has been paid in full; and voluntary payments by the owner to the builder will not be considered, as against the claim of a sub-contractor.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*Geo. P. Strong,* for appellants, cited: Eystra *v.* Capelle, 61 Mo. 578; Squires *v.* Fithian, 27 Mo. 139; Wag. Stat. 911, sec. 21, p. 935, sec. 14; Putnam *v.* Ross, 46 Mo. 337; Simmons *v.* Carrier, 60 Mo. 582; Porter *v.* Cooke, 35 Mo. 107; Gault *v.* Soldani, 34 Mo. 150; Heltzell *v.* Haynes, 35 Mo. 482; McWilliams *v.* Allen, 45 Mo. 573; Graves *v.* Pierie, 53 Mo. 423; White *v.* Dorris, 35 Mo. 187; Gen. Stat. 1865, pp. 765, 768.

*Martin & Lackland,* for respondent, cited: Wag. Stat. 911, sec. 21; Tucker *v.* Gist, 46 Mo. 339; Burgwald *v.* Weippert, 49 Mo. 60; Gautner *v.* Kemper, 58 Mo. 567; McLaren *v.* Hale, 26 Iowa, 297; Miller *v.* Hollingsworth, 33 Iowa, 227; Dean *v.* Martin, 78 Pa. St. 56 (1875); Ph. on Liens, 94, 95, sec. 65, p. 148, sec. 101; Knott *v.* Carpenter, 3 Head, 542; Knapp *v.* Brown, 11 Abb. Pr. (N. S.)

124; Ph. on Liens, 83, 84, sec. 58; Campbell *v.* Schaife, 1 Phila. Rep. 187; Shaw *v.* Thompson, 105 Mass. 350.

LEWIS, J., delivered the opinion of the court.

This is a suit by a sub-contractor, to establish a mechanic's lien. The defendant Harriet E. Chamberlain was owner in fee of a lot in the city of St. Louis, acquired by purchase since her marriage. Defendant Edward C. Chamberlain, her husband, entered into a written contract, in his own name, with defendant Berry for the building of a house on Mrs. Chamberlain's lot, at a total cost of $6,355. The plaintiff, claiming to have furnished, under a contract with Berry, window frames, sash, and other materials, amounting in value to $1,631.13, seeks to establish a lien upon the estates of both husband and wife in the lot and appurtenances. The Circuit Court rendered judgment enforcing the lien, as demanded by plaintiff, from which the defendants appealed.

The relation in which Mrs. Chamberlain stood to the making of the building contract may be best understood from some passages in the testimony.

Defendant Berry testified: " I made a contract in writing with Chamberlain to build the house. I did not know who owned the lot. Nothing was said, at the time of making this contract, about his making a contract for his wife."

Mrs. Chamberlain testified: " I knew Mr. Berry was to build the house.

" *Question.* Did you know it was being built on your land? *Answer.* Yes, sir.

" *Q.* Did you pay, any money towards the building, and, if so, how much? *A.* No, sir, I paid nothing.  *  *  *

" *Q.* Why did you not object to a house being built on your land? *A.* My husband does as he chooses with his own money. There was nothing to object to.

" *Q.* You were willing, then, that it should be built on your land? *A.* Yes, sir.

" *Q.* Did you know George W. Berry, and did he not

build this house? *A.* I know him by sight; he built the house.

" *Q.* How often did you visit the house while it was being built? *A.* Scarcely at all until it was nearly finished. * * *

" *Q.* Did you know the contract price with Mr. Berry? *A.* I did.

" *Q.* Did you not approve the plan for this building? *A.* I did.

" *Q.* Don't you claim this house to be yours, and as built for you on your property? *A.* No, sir; only as it was built as a house for us all.

" *Q.* You don't consider this your house, then? *A.* No, sir, not apart from my husband. Husband and wife are one.

" *Q.* Was your husband your agent in respect to the improvement of this property; if not, who was? *A.* My husband built the house for himself, and simply told me of it.

" *Q.* Did you not consent to its being built? *A.* My consent wasn't asked.

" *Q.* You did not object to its being built? *A.* No, sir.

" *Q.* Has any one acted as your agent other than your husband since your marriage? *A.* I have no agent. * * *

" *Q.* Who first proposed to build the house on your lot? *A.* My husband.

" *Q.* Who was to pay for the building of the house, and with whose money? *A.* My husband, with his own money.

" *Q.* Did you ever authorize him to use any of your money or property in the building of the house? *A.* No, sir. * *. *

*Q.* " Did you ever authorize your husband to make any contract for the house for you or in your name as your agent? *A.* No, sir.

" *Q.* Did you have anything to do, directly or indirectly, so far as determining to build was concerned, or the amount of money to be expended? *A.* Nothing at all. * * *

" *Q.* When you speak of approving the plan of the house, what do you mean? *A.* I liked the arrangement; I approved of the arrangement."

The defendant Edward C. Chamberlain said: "I never had any authority from my wife to make this contract; I was building the house with my own means. * * * My wife did not object to my building the house with my money. I never asked her if I might build it. She knew nothing of my plans, and had nothing to do about determining whether I would build or not."

At the instance of plaintiff, the court, sitting as a jury, declared the law as follows:

"If George W. Berry, at the instance and request of Edward C. Chamberlain, and with the knowledge and approbation of Harriet E. Chamberlain, his wife, built the house mentioned in the lien, on the lot described in the same, and if the said lot was owned by the said Chamberlains in the estates and interests created in the deed of Whiting to Harriet E. Chamberlain in May, 1871, then the estates of both Harriet E. and Edward C. Chamberlain are subject to the lien claim of material-men who furnished materials in the construction of said building at the instance and request of said Berry."

So far as the liability of Mrs. Chamberlain's estate to the lien was concerned, her husband, as such, had no more capacity to fix it than any stranger. He could do so as her agent, but not otherwise. The law is well settled that the owner of the estate must, directly or indirectly, contract for the work which is to charge a lien upon it. If "knowledge and approbation" are ever found sufficient for the purpose, it is not because of any intrinsic potency in those facts, but because they may be *prima-facie* evidence of authorization by the owner, to the effect of making him a principal party to the contract. Like all other *prima-facie* evidence, however, it may be utterly defeated by direct testimony to the contrary.

The strictness of the rule requiring the owner's partici-pation in a contract which is to fix a mechanic's lien on his estate has been repeatedly exemplified by decisions of our Supreme Court. *Porter* v. *Tooke*, 35 Mo. 107 ; *Squires* v. *Fithian*, 27 Mo. 134. From other States the illustra-tions are numerous and uniformly conclusive. *Belding* v. *Cushing*, 1 Gray, 576.

It is equally clear that, when an estate is to be subjected to a mechanic's lien through the act or intervention of a person other than the owner, not only must such person have assumed to contract in behalf of the owner, but an authorization so to do must appear, either by prev'ous ap-pointment or by subsequent ratification. Mere knowledge and approbation do not, of themselves, amount to either appointment or ratification. In *Baxter* v. *Hutchings*, 49 Ill. 116, it was held that, " where a petition for a mechanic's lien alleges that the son of a widow who was the owner of a mill contracted for machinery to place therein, as well for himself as for the mother, with her knowledge and consent, as agent," it was sufficient on demurrer. " But, to succeed, it must be proved that the son had authority from the mother to make the contract ; that his mere possession of the mill, as agent or otherwise, is not evidence of authority to bind any interest other than his own."

In *McCarty* v. *Carter*, 49 Ill. 53, it was held that, " where a contract is made by a person to erect a building upon premises which belong to another, and such contract is made without the knowledge or authority of the owner, the fact that such owner, after its completion, receives the rents and profits therefrom does not amount to a ratifica-tion of such contract, so as to create a lien upon the prem-ises." The suit in that case was against Samuel McCarty, his wife, and her infant daughter by a former husband. The contract was made by Samuel McCarty, for improvements on a lot belonging to the daughter, subject to a right of dower in

her mother. Referring to the wife and daughter, the court said: "Even admitting them to have both been competent to contract, certainly the mere fact that McCarty made a contract for them, without their authority or knowledge, would neither bind them nor compel them to submit to a lien merely as a consequence of receiving rent. If they had been competent to contract, and knew that the building was being erected under a contract made *in their behalf*, by a person *claiming authority to bind them*, and had permitted the contractor to proceed under that belief, a very different question would be presented. * * * If the husband had an estate during coverture, it is certainly not impossible that he would have made the contract in his own name, and on his own credit."

Plaintiff claims, in the present case, that the wife's authorization or her ratification of the contract may be assumed from the fact that the house was to be a residence for herself and children, with her husband. But the case is stronger against him than the one just referred to. In that the daughter had become of age when the rents were received, and the court, in its opinion, assumes that the receipt of rents was a beneficial use in the property, as to both mother and daughter. But here it was no part of Mrs. Chamberlain's duty or care to provide a home for herself and her children. That was incumbent on the husband and father. The occupancy of the premises was his beneficial use, and not hers. *Spinning* v. *Blackburn*, 13 Ohio St. 131.

It thus appears that the instruction was erroneous in assuming, as the condition fixing Mrs. Chamberlain's liability, that which was only *prima-facie* evidence of the true condition, and subject to rebuttal. There was, of direct rebutting testimony, at least a sufficiency to declare the real issue of fact to be whether the contract was made, not merely "with the knowledge and approbation of Harriet E. Chamberlain," but also by her authority and in her be-

half. The relations of life in which the two first elements may exist, without any concurrent liability on their account, are almost as multitudinous as the affairs of humanity.

We are referred to the decision in *Burgwald* v. *Weippert*, 49 Mo. 60, as being antagonistic to these views. But we fail to find it so. The leading question in that case was whether — the land of the wife being subject to a lien on account of a building contract made by the husband — a general judgment for the plaintiff could be rendered against her, or only a special judgment against the property improved. The opinion seems to assume that the contract was "made for her use, as the house was to be erected on her land." But this only shows that the court perceived the necessity of recognizing her connection with the contract, even when there was not, as there is in the present case, testimony rebutting it. The forms of expression would, doubtless, have been much less obscure if the effect of such rebutting testimony had been the question before the court. If it were possible, in any event, to extract from the language used a ruling to the effect that in all such cases the husband's agency for his wife is established by the marital relation, a more recent decision effectually destroys such a conclusion. In *Eystra* v. *Capelle*, 61 Mo. 578, it was held that, "to establish an agency of the husband on behalf of the wife, the evidence must be cogent and strong, and more satisfactory than would be required between persons occupying different positions." If, on the other hand, the husband's power to bind the wife's estate by a building contract arises, not from an implied agency, but from the fact of her being, within the terms of the statute, a "married woman," why may not any other person, whether agent or otherwise, bind her property to the same effect?

In this connection the plaintiff refers us to Wagner's Statutes, page 911, section 21, as follows: "Every person, including all *cestuis que trust*, for whose immediate use, enjoyment, or benefit any building, erection, or improvement

shall be made shall be included by the words 'owner or proprietor' thereof, under this chapter, not excepting such as may be minors over the age of eighteen years, or married women."

As we interpret this section, its effect is simply to remove from the specified classes those disabilities which would hinder them from making or authorizing a building contract to bind their estates with a mechanic's lien. *Tucker* v. *Gest*, 46 Mo. 339. In empowering a married woman to make or sanction such a contract, it cannot be intended to subject her estate to a liability, without authority from her, such as could never be attached, without his assent expressed or implied, to the property of any other person. The statute places *cestuis que trust*, married women and others, upon an equal footing with every other " owner or proprietor." But it does not place them upon a worse footing, or leave their estates to the mercy of persons not properly authorized, for the creation of mechanics' liens *ad libitum*.

The Circuit Court refused to give, upon defendants' application, a series of instructions which, except in some unimportant verbal features, were in harmony with the views here expressed. Defendants asked, also, for instructions to the effects following:

" 1. That if defendant Chamberlain has paid to Berry all that was to be paid him before completion and delivery of the house free from liens, and liens have been filed to an amount which, including the payment made, will exceed the contract price for the building, the plaintiff cannot recover so as to oblige defendants to pay more than the contract price in all.

" 2. If any part of plaintiff's bill was furnished after notice given him by Chamberlain that he must look to Berry alone for payment, the plaintiff cannot recover as to such part.

" 3. It was not competent for Berry, without the concurrence of Chamberlain, to charge the premises, by sub-

contracts or otherwise, with any liens which could cause the whole expense of the building to exceed the contract price."

These instructions the court refused to give.

The whole theory of the mechanics' lien law is founded upon contract. By no other means, under our institutions, could one man ever acquire a claim upon the property of another. Every building contract is made with reference to the existing law, which thus becomes incorporated with its terms. The owner's contract with the builder empowers the latter to procure materials from the material-man, who is thus, in his secondary or subsidiary position, placed in a contract relation with the owner. But this contract relation can have no more enlarged extent than the original contract. The builder, whose *quasi* agency for the owner enables him to create it, cannot bind his principal beyond the authority conferred. The material-man or sub-contractor, deriving all his claims from the original contract, must look to its terms for the extent and limits of his capacity to fasten a lien upon the owner's premises. Were it otherwise, a man might contract for the building of a house at $5,000, and afterwards find liens established against it for $10,000 or upwards — more, perhaps, than the value of lot and building together. This would, in effect, be transferring to one man the property of another without his consent, directly or indirectly secured. Such a result would be repugnant to the fundamental principles of civil government.

While, however, the material-man may not furnish materials beyond the limit of cost fixed in the original contract, the owner himself, imprudently disregarding the existing law which forms part of his contract, may, by his own act, enhance the cost of the improvement beyond his first intent. The law and the contract invite supplies from material-men to the amount of the contract price. If the owner will, nevertheless, make unguarded payments to the builder, he has only himself to charge with any resulting increase of his liabilities or expenditure. The law provides

means for his protection against undue exactions from the builder. The rights of material-men and sub-contractors are not to be sacrificed in consequence of his omission to use them.

The rights, with their limitations, of the sub-contractor being thus defined by the original contract, he is entitled to the full measure of its obligation as against the owner. The latter, having given an irrevocable power to bind his estate, cannot, by a notice to the sub-contractor, deprive him of the benefits of his sub-contract, within their prescribed limits, even though the builder has been paid in full. *Donahy* v. *Clapp*, 12 Cush. 440; *Atwood* v. *Williams*, 40 Me. 409.

It thus appears that the instructions asked for by defendants were correct in so far only as they implied a protection against liens of material-men and sub-contractors, or rather of all persons, including the builder, to an amount exceeding in the aggregate the contract price for the building. But voluntary payments to the builder are not to be considered in this amount as against other persons.

A question is raised whether, under section 13, page 935, Wagner's Statutes, which protects a husband's interest in his wife's estate, with its "rents, issues, and products," against attachment or execution for his sole debts, the mechanic's lien can be enforced as against defendant Edward C. Chamberlain. The section contains a proviso that " such *annual products* may be attached or levied upon for any debt or liability of her husband created * * * for labor or materials furnished upon or for the cultivation or improvement of such real estate." Defendants' counsel claim that the expression " annual products " includes only the growth or emanations from the soil. It is unnecessary to discuss this question. The plaintiff may be entitled to a judgment declaring a lien against the defendant's interest in the lot, whatever that may prove to be. He may hold some interest independently of his wife's estate. What

title would pass by the execution sale must be determined in a different proceeding. The statutory exemption is for the benefit of the wife; and, as she would be no party to the execution or the sale, the full benefit of the statute may be effectually claimed by her, notwithstanding the judgment against her husband. *Woodward* v. *Wilson*, 68 Pa. St. 208; *Martin* v. *Pepall*, 6 R. I. 92, 97.

The judgment will be reversed and the cause remanded. All the judges concur.