PHILIP SCOTT ET AL., Appellants, *v.* ARTHUR E. COOK ET AL., Respondents.

### December 30, 1879.

Where a building contracted to be finished on November 1st was accepted as completed on October 29th, and on December 6th, by direction of the contractor, the subcontractor who had done the painting and glazing put weather-strips on the windows and painted them, *held*, that this was not a part of the original contract, and would not authorize a lien for work done under the contract, to be filed on March 19th.  The subcontractor was bound to take notice of the fact that the house had been completed at the time this work was done.

Appeal from the St. Louis Circuit Court.

*Affirmed.*

· E. T. Farish, for the appellants, cited : *Putnam* v. *Ross,* 46 Mo. 337 ; *DeWitt* v. *Smith,* 63 Mo. 263 ; *Garnett* v. *Berry,* 3 Mo. App. 197 ; *Fitzgerald* v. *Thomas,* 61 Mo. 499 ; *Cantwell* v. *Massman,* 45 Mo. 103 ; *Livermore* v. *Wright,* 33 Mo. 31 ; *Peck* v. *Richardson,* 2 Mo. App. 600.

Lee & Chandler, for the respondents, cited : *Lutz* v. *Ey,* 3 Abb. Pr. 475 ; *Thompson* v. *Yates,* 28 How. Pr. 142 ; *Henly* v. *Wadsworth,* 38 Cal. 356 ; *Garnett* v. *Berry,* 3 Mo. App. 197 ; *Peck* v. *Richardson,* 2 Mo. App. 600.

Bakewell, J., delivered the opinion of the court.

This action is on a mechanic's lien for painting and glazing four houses belonging to defendants I. and J. Meyer, defendant Cook being the contractor. The claim is for a balance due upon one single charge, for doing all the painting and glazing upon these four houses, at the contract price of $1,200, of which $430 has been paid, leaving due $770.

It appears from the evidence that Cook was under contract with the owners to complete the houses by the 1st of November, at the price of $21,800. The houses were to be inspected and accepted by the architect, Grable. Four thousand dollars was to remain on deposit in a bank, not to be drawn out by Cook until the time for filing liens by subcontractors had elasped. These were the terms of the written contract.

On October 27th, Cook, Grable, and the owners went over the houses together, and inspected them. The houses were then accepted as completed according to contract, and the keys were delivered to the owners on October 29th. On March 1, 1878, no notice of lien having been given, the bank, by the direction of the Meyers, paid over the $4,000 to Cook. The contract of Cook with defendants provided that all broken or cracked glass must be " replaced, at com-

pletion, with perfect glass.'' The lien was filed on March 19th. There was evidence tending to show that a tenant complained of dust coming in at the cellar windows, and that on November 15th, mouldings, or weather-strips, were placed on these windows. Cook required plaintiffs to paint these weather-strips and to replace some broken lights, and to touch up some painting. This was done in pursuance of a note of Cook, indorsed on a letter of Meyer to Grable, requiring these things to be done. The glass was replaced by plaintiffs on December 7th, having been broken about eight weeks before. A finishing coat of paint was given, sometime in November, to some wood-work in the basement; and a coat to the back stoop on Thanksgiving day, in November. The weather-strips were painted on December 6th. The only work as to which there is any proof that it was done within four months of filing the lien, is the replacing a few panes of glass and giving a coat of paint to these mouldings. There is no proof that the owners of the buildings requested either Grable or Cook to employ plaintiffs to paint these mouldings, or knew that it would be done by them. Cook, the contractor, was about the premises whilst plaintiffs were doing some extra work there, not embraced in the present claim; and, thinking that these weather-strips ought to be painted, he requested plaintiffs to do it, and it was done.

At the close of plaintiffs' case, the court instructed the jury that, on the pleadings and evidence, plaintiffs are not entitled to a lien against the property; whereupon plaintiffs took a nonsuit with leave, which the court refused to set aside.

This is not like an ordinary case of agency, where the liability arises from an authority from the person whom the plaintiff seeks to charge. But for the statute, the circumstance that the man who contracted with the owners to erect the buildings, directed plaintiffs to do painting and glass-work upon them, and that it was done, would fix no

liability upon the owners of the buildings. The liability is purely a creation of the statute, and must rest upon the conditions imposed by the statute, one of which is that there be really an actually subsisting contract between the builder and the owner when' this work was done by the subcontractor. If the contract between the builder and the owner was fairly at an end when this last job of painting and glazing was done, on what ground can the mechanic gain a lien by virtue of having done it? The builder cannot bind his principal beyond the authority conferred, or after his authority has ceased. The subcontractor derives all his claim from the original contract, and must take notice of its terms, at least so far as those terms limit the power of the builder to establish a relation of contract between the owner and the subcontractor. The lien law, of course, is incorporated in the terms of the building-contract ; and that law empowers the contractor to procure work and materials from men who may, by virtue of this subcontract, affix a lien upon the property of the owner. But if the termination of the contract were no protection to the owner against such claims, he could never know when his liability would cease, and the contractor might have a window-sill or a weather-strip touched with paint, from month to month, by one who had been a subcontractor in the erection of the house, whose last work under his subcontract might thus be done a year after the house was completed and occupied, and the contractor paid in full. *Garnett* v. *Berry*, 3 Mo. App. 197 ; *Peck* v. *Richardson*, 2 Mo. App. 600.

There may be border cases in which it will be very difficult to say that all contract relations between subcontractor and owner have ceased, and that the right to do work for which a lien may be had is gone. But we hardly think that this is one of them. The terms of the contract between the owner and the contractor were definite enough ; and it is manifest, from the arrangement as to depositing money to be paid at the expiration of four months from the

time limited for the completion of the work, that the owner and builder intended that time should be of the essence of the contract. The houses were completed within the time named, and were inspected and accepted by both owner and architect as completed within the time. More than five weeks after this, a weather-strip is put up and painted, and a pane or two of glass, which the subcontractor was bound to put in under his contract, but which he had omitted, are put in ; and these jobs are relied upon to carry the time for filing the subcontractors' lien weeks beyond the time at which the owner — in perfect security against liens, as he might well suppose — has paid the contractor in full. In this case there is no ground for suspicion of bad faith ; but it is easy to see that the establishing of such a rule would open a wide door for fraud. The owner, who, at the expiration of the time named in the contract, had accepted a building as complete, could never know that a pane of glass had not been subsequently inserted, or a coat of paint added to the panel of a door, so as to constitute the last item of a large job done under an express or implied contract, and thus carry the entire bill, as the subject of a lien against the house, to a period long beyond that at which the owner had supposed all relations between himself and contractor and subcontractors at an end.

In *Bruce* v. *Berg*, *post*, p. 204, there had been an apparent completion of the house, but it was not accepted by the owner or by the architect ; and certain stone-steps being condemned by the architect, the subcontractor was compelled to replace them. In that case there could be no doubt of the power of the subcontractor to order stone under the subsisting contract, and of the right to a lien on the part of the material-man, on taking the proper steps.

An improvident payment by the owner to the contractor, before the time within which liens may be filed, will of course be no defence against a lien. But where the owner

has taken all proper steps to protect himself, and the house is completed within the contract time, and openly accepted as completed, from the contractor, by the owner and architect—this is a matter of which the subcontractors are bound, we think, to take notice ; and if they delay filing their lien claims beyond a time to be counted from the date at which the house was completed, and was openly accepted and delivered as completed, according to the contract terms, it seems just that the property of the owner, who has in good faith paid the contractor in full according to the terms of his contract, at the expiration of the time within which liens can be filed, counting from the completion of the house, should be relieved from liability.

The judgment of the Circuit Court is affirmed. All the judges concur.