GENERAL FIRE EXTINGUISHER COMPANY v. SCHWARTZ BROTHERS COMMISSION COMPANY et al.; FARMERS ELEVATOR COMPANY et al., Appellants.

**Division One, November 19, 1901.**

1. **Mechanic's Lien:** WHEN FILED: INDEBTEDNESS. Where the statute says that the lien of the subcontractor must be filed within four months "after the indebtedness shall have accrued," it means within four months after the work is finished, and does not refer to the date at which the debt is due.

2. ———: WHEN TIME BEGINS TO RUN. Where the building is substantially completed and so treated by all the parties and delivered by the contractor to the owner, with only a few immaterial particulars remaining to be done and as to those the owner accepts the promise of the contractor to do them afterwards, the promise to do being accepted in lieu of the actual deed, the time for filing the lien begins to run from the date of such delivery of the building to the owner. But on the other hand, the limitation does not begin to run until the last item called for by the contract is furnished or the last work under it is done.

3. ———: ———: CASE STATED. A contract for the construction of a fire extinguishing apparatus in an elevator required it to be constructed to the satisfaction of a local board of underwriters and also according to plans and specifications called for in the contract. After the work was supposed to be completed the examiner for the underwriters required certain coils to be covered, which was promised to be done, and thereupon he waived further objection to the work,

the promise being later performed.   Later, after a test and use for two or three months the system proved insufficient because of the absence of certain air gauges, and these, it was found on an examination of the contract, were called for by it, and on the sub-contractor's attention being called to that fact by the owner he supplied the air guages, and when the test was made the next day one of the glass tubes of the new gauges was discovered to be broken, which allowed the air to escape.   This was remedied, and the next day a sand hole was discovered in one of the valves, and this the-contractor was required to replace, and this being the last work performed by him, he filed his mechanic's lien just four months from that date.   *Held*, that the lien was filed within four months after the indebtedness accrued, within the meaning of the statute, the approval of the inspector for the underwriters and the mere use of the apparatus not being sufficient to justify a holding that the terms of the contract had previously been fully met.

4.   ———: ———: EXTENSIONS BY AGREEMENT.   The time within which mechanic's liens may be filed can not be extended by agreement. The lien is a creature of statute and not of contract.

5.   ———: ———: STATEMENT OF OWNER: HOW FAR COMPETENT.   A statement by the owner to the contractor that the contractor's men were at work on the building now and would complete the work on, that day and that his lien would begin to run from that day, does not serve to defer the time of the lien's beginning if it had already begun to run, but does show how he understood the effect of the work then being done, and that he understood that the prior use by him of the improvement was not an acceptance of the work as a fulfill-ment of the contract, and it also goes to show that the work then being done was not a mere scheme on the part of the contractor to extend the period for filing the lien.

6.   ———: SUBSEQUENT MORTGAGE: IMPAIRMENT OF LIEN.   The delivery of a deed of trust by the owner of the lots after the contract for improvement is made and the work under way, does not impair the contractor's right to a mechanic's lien.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

AFFIRMED.

*Clinton Rowell, Joseph H. Zumbalen* and *Rassieur & Ras-sieur* for appellants.

(1) The court erred in refusing to give the demurrer to the evidence at the close of plaintiff's case, as it clearly appeared that the lien was not filed in time. R. S. 1899, sec. 4807. (a) The lien should have been filed within four months after the acceptance and approval of the plant, on July 23, 1896. Mfg. Co. v. Burns, 59 Mo. App. 391; Scott v. Cook, 8 Mo. App. 197; Johnson v. White (Tex.), 27 S. W. 174; Phillips on Mech. Liens (3 Ed.), sec. 137; Boisot on Mech. Liens, sec. 486; Flint v. Raymond, 41 Conn. 510; Woodruff v. Hovey, 91 Me. 116; Trustees v. Davis, 85 Va. 196. (b) The doing and furnishing additional work and materials which had been overlooked, subsequent to the approval and acceptance of the work, will not extend or enlarge the time for filing the lien. Cases cited above. (c) The air gauges were not called for by the original contract for the improvement with the owner, and, hence, the furnishing them, after acceptance and approval of the plant, did not extend the time. Sash & Door Co. v. Buckner, 80 Mo. App. 95; Scott v. Cook, 8 Mo. App. 193. (d) The work done on November 12 was repair work on parts of the apparatus accepted as complete in July, and did not extend the time. Berry v. Turner, 45 Wis. 105; Congdon v. Kendall (Wis.), 73 N. W. 659; Harrison v. Homeopathic Ass'n, 134 Pa. St. 558; Homeopathic Ass'n v. Harrison, 120 Pa. St. 28; McKelvey v. Jarvis, 87 Pa. St. 414; Phil. P. & P. Co.'s Estate, 4 Pa. Dist. 57; Davis v. Alvord, 94 U. S. 545; Dunn v. McKee, 5 Sneed, 657. (e) The alleged agreement of November 12 that the work then being done was work called for and done in completion of the contract, was not effectual to preserve the lien. Fitzgerald v. Thomas, 61 Mo. 51; Hannon v. Gibson, 14 Mo. App. 37; Minor v. Moore, 53 Tex. 224; Davis v. Alvord, 94 U. S. 545; Hilliard v. Allen, 4 Cush. (Mass.) 536. (2) The court erred in giving the plaintiff's first instruction, and in refusing defendant's second, fifth, seventh and tenth instructions. See authorities under point 1. (3) The court erred in refusing

to instruct that plaintiff was not entitled to a lien for work done in the old building, because the evidence discloses that the work of November 10 and 12 was repairing air gauges in the new building, and there was a separate contract for each building. Kern v. Pfaff, 44 Mo. App. 29; Kearney v. Wurdeman, 33 Mo. App. 456; Livermore v. Wright, 33 Mo. 31.

*James A. Seddon* and *James L. Blair* for respondent.

(1)    Plaintiff's indebtedness accrued, under the statute, on the twelfth day of November, 1896, the date on which the last work was done and the last material furnished, pursuant to the contract between the owner and the original contractors, and pursuant to the contracts between the original contractors and the plaintiff.    The time for filing a lien began to run from the furnishing of the said last item.    Livermore v. Wright, 33 Mo. 31; Squires v. Fithian, 27 Mo. 134; Allen v. F. M. & S. Co., 73 Mo. 688; Bruns v. Braun, 35 Mo. App. 237; Miller v. Whitelaw, 28 Mo. App. 339; Fulton Iron Works v. M. & S., 80 Mo. 265; Cole v. Barron, 8 Mo. App. 509; Miller v. Wilkinson, 167 Mass. 136; Monaghan v. Putney, 161 Mass. 338; Worthen v. Cleveland, 129 Mass. 570; Cole v. Uhl, 46 Conn. 296; Nichols v. Culver, 51 Conn. 177; McIntyre v. Trautner, 36 Cal. 429; Gordon Hdw. Co. v. Railroad, 86 Cal. 620; National Stock Yards v. O'Reilly, 85 Ill. 546; Washington Bridge Co. v. Land River I. Co. (Wash.), 40 Pac. Rep. 982; McCarthy v. Groff (Minn.), 51 N. W. Rep. 218.    (2) Where goods are furnished by a materialman and his contract is nearly completed, it is immaterial that the last items are furnished by the materialman several months thereafter, provided that the goods furnished are a part of the original contract, and provided they are furnished at the request of the owner and not voluntarily furnished by the materialman for the purpose of saving his lien.    See authorities cited under point 1.    (3) Where it is specially agreed between the materialman and

the owner, or impliedly understood, that the account is to be kept open and continued as one and the same continuous transaction and course of dealing, the account will be considered as one continuous account. (4) Mr. Kalb, agent of the owner, requested that certain final work be done, on the ground that it was called for under the contract, and said agent directly stated to plaintiff, while said work was going on, that it was being done under the contract, and that the lien time would run from said date. The plaintiff acted on that interpretation of their contract and transactions under it and postponed filing its lien. Under such circumstances, defendant will not be heard to claim that the additioal work, done at its request to complete the contract, was not a continuation of the previous work and done under the same contract. Williams v. Railroad, 153 Mo. 487; Carter v. Foster, 145 Mo. 383; Wetmore v. Crouch, 150 Mo. 671; Drug Company v. Sanders, 70 Mo. App. 221; Clark on Contracts, p. 549; Topliff v. Topliff, 122 U. S. 121; French v. Pearce, 8 Conn. 439; Gas Company v. Wire Company, 155 Pa. St. 22; People ex rel. v. Murphy, 119 Ill. 159; District v. Gallagher, 124 U. S. 505; McIntyre v. Trautner, 63 Cal. 429; Garnhart v. Finney, 40 Mo. 449; Bank v. Frame, 112 Mo. 502; Krey v. Hussman, 21 Mo. App. 343; Reynolds v. Kroff, 144 Mo. 433. (5) Even if there had been an absolute acceptance of the work and defects had afterwards appeared, and had been remedied by the plaintiff at the request of the owner and the contractor, the time for filing lien would run from the date of remedying said defects. Haydon Slate Co. v. Anderson, 75 Mo. App. 281; also authorities cited under point 4.

VALLIANT, J.—This is a suit by a subcontractor to establish a mechanic's lien. The trial in the circuit court resulted in a personal judgment against Schwartz Brothers Commission Company, the original contractor, for $7,830.12, and a special judgment establishing the lien, from which special judgment the defendant, the Farmers Elevator Company, the

owner of the property, and defendant St. Louis Trust Company, trustee in a deed of trust on the property, prosecute this appeal.

That the amount claimed is due the plaintiff, that the labor and materials were furnished and went into the building, that all the requirements of the statute to establish the lien have been observed, except as to the limitation of time in filing the same, are facts undisputed.   The only question in the cause is, was the lien filed within four months after the indebtedness occurred as prescribed by section 4207, Revised Statutes 1899 ?

The work in question was the construction of a fire extinguishing apparatus in the elevator.   The Schwartz Brothers Commission Company contracted with the elevator company to build an addition to their elevator according to certain plans and specifications and to equip it with a fire extinguishing apparatus, on a system to be satisfactory to the St. Louis Board of Underwriters ; the object in submitting it to the approval of the board of underwriters being to obtain a reduction in insurance rates.   The Schwartz Brothers sublet the contract of building and furnishing the fire extinguishing apparatus to the plaintiff in this suit, under certain plans and specifications agreed upon between the parties and approved by the board of underwriters.   For the purposes of this suit it will not be necessary to set out here the specifications further than to say that there were to be four tanks on the top of the buildings and each tank was to be equipped with a water gauge and an air gauge.

In June, 1896, while the work was in course of construction and nearing its completion, the elevator company were anxious to have it brought to the condition which would be satisfactory to the underwriters, so that it might obtain the reduction in insurance rates, and began to urge Mr. Henley, the inspector of the underwriters, to inspect the work and pronounce it finished.   Accordingly, about July 1, Mr. Henley inspected the work, but declined to pronounce it complete, be-

cause he found some sprinkler heads not inclosed in casings' and some steam coils not covered. There was a difference of opinion between Mr. Henley and Mr. Moore, the superintendent of plaintiff's work, as to the duty of the plaintiff under the contract to inclose the sprinkler heads in casings as demanded, but finally Mr. Moore agreed to do so, but said he did not want to cover the steam coils just then as he was busy and there was no hurry for it but would do it later. At that time Mr. Henley made no objection relating to water gauges or air gauges; he had not then seen the contract under which the work was being done, and inspected it only from the standpoint of a system satisfactory to the board of underwriters. On July 23, 1896, Mr. Henley again inspected the work and finding the sprinkler heads inclosed and taking the promise of Mr. Moore that he would cover the steam coils in due season, addressed a note to the secretary of the board of underwriters of that date, informing him that the apparatus was complete. The system was put into operation that day and the elevator company's insurance rates reduced in consequence. The steam coils were covered within a few days thereafter.

At the time Mr. Henley gave the certificate above mentioned, each tank was supplied with a water gauge but not with an air gauge. In place of the four air gauges there was only one which was connected with the four tanks and this one was in the engine room. It seems that such had been the system theretofore in use in similar appliances, but the contract here called for an air gauge on each tank and this was regarded as an improvement. When Mr. Henley inspected the work neither he nor Mr. Moore noticed this point. Afterwards, about November 1, a deputy of Mr. Henley's reported to him that the apparatus was not working satisfactorily, in that a proper air pressure on the tanks could not be pumped up, owing to the arrangement of the piping and gauges, and thereupon, after consulting with Mr. Kalb, who was vice-president of the

elevator company and who acted for the company in this matter, Mr. Henley called on Mr. Moore and asked him to put in the air gauges. Mr. Moore testified that Mr. Kalb also called on him and pointed out to him that the gauges were called for in the contract and Moore then agreed to put them in. Mr. Kalb denied that he went in person to Mr. Moore about this, but stated that he requested Mr. Henley to go to see about it. At all events one or both of them went to see him and his attention was called to the requirement of the contract in that particular and he undertook to supply the deficiency and did so.

The wooden handles on the water gauges that had previously been put on having been broken, Mr. Moore concluded to put in combination water and air gauges which was done and this was approved by all the parties The combination water and air gauges was regarded as the better system. The apparatus being at that time in operation, to do this work it was necessary to empty the tanks and afterwards replace the air in them, which operation threw the whole system out of action and it had to be readjusted. These combination gauges were put in on Saturday, November 7. On Monday, November 9, plaintiff was notified that one of the glass tubes of the new gauges was broken, which allowed the air to escape. On November 10, this was remedied and the air again pumped into the apparatus. On November 11, a sand hole was discovered in one of the new valves and this the plaintiff was required to replace, involving again the throwing of the system out of gear and restoring it to condition; this was done November 12, and was the last work done by the plaintiff as under the contract. The lien was filed within four months of that date, the ten days' previous notice thereof required by the statute having been duly given.

By the terms of the contract the Schwartz company was to pay the plaintiff the agreed price "in cash in thirty days after completion of the work herein specified, and approval by the St. Louis Board of Fire Underwriters." On June 30, 1896,

as the work was nearing its completion the Schwartz company executed and delivered to plaintiff its nine promissory notes covering the amount of the contract price of the work, the first payable sixty days after date, the others at intervals of fifteen days, the last maturing one hundred and eighty days from date, the notes being timed to mature within four months from the date when it was assumed the work would be finished.

The payments were divided in this way for the accommodation of the Schwartz company and at their request. Towards the latter part of September, 1896, Mr. Schwartz and Mr. Kalb called on Mr. Moore to ask an extension of the notes, but Moore was unwilling to extend them beyond the period in which he could file his mechanic's lien and so informed them. He was then under the impression that the work was finished and that the four months limitation was running. On November 12, according to Moore's testimony, these gentlemen were again at his office on this business, when he said to them that he would not extend the notes beyond the lien period; then Kalb said, "Well, that is six months," to which Moore replied, "No, it is four months." Kalb then asked, "When does it date from?" Moore answered," From the last work we did when we finished the work." To this Kalb replied, "Well, you men are working there now, and Schwartz should have an extension for four months from to-day." Kalb denies this conversation. The notes were not extended but were in fact carried by the plaintiff without action for several months and the lien was not filed until March 12, 1896, which was just within four months from the date of that alleged conversation.

There was but one contract between the elevator company and the Schwartz company, which called for the building of an addition to the elevator building and the equipment of the whole with the fire extinguishing apparatus. But the Schwartz company sublet the construction of the fire extinguishing apparatus to the plaintiff in two contracts, one for the old building, the other for the new addition, but when completed the ap-

paratus in the old and that in the new parts of the building formed one system and operated as such.    The combination air and water gauges were completed on both buildings, that is on the old building and the addition, on November 7; the glass tube that was found broken November 9, and the sand hole in the new valve which was discovered November 11, and which necessitated the work that was done on November 10 and 12, were in that part of the apparatus which was on the new addition, and there was no work done on that part which was in the old building after November 7.

I.    At the close of the plaintiff's evidence the defendants asked an instruction to the effect that the plaintiff was not entitled to a lien, which instruction the court refused and that constitutes the chief complaint of appellants now.

Under the terms of section 4207, Revised Statutes 1899, the lien of the subcontractor must be filed within four months "after the indebtedness shall have accrued."    This, as the learned counsel for appellant rightly maintain, means within four months after the work is finished, and does not refer to the date at which the debt is due.

The counsel are also correct in their position that when the building is substantially completed and the contractor tenders it as complete and it is accepted as such by the owner, the contractor can not afterwards, at his own instance, and against the will of the owner, perform some part that was called for in the contract but which had been omitted in the construction and thereby extend the period for filing his lien.

It is also a correct interpretation of the law that where the building is substantially completed and so treated by all the parties and delivered as such by the contractor to the owner, with only a few trifling particulars remaining to be done and as to those the owner accepts the promise of the contractor to do them afterwards, the promise to do being accepted in lieu of the actual deed, the time for filing the lien begins to run from the date of such delivery of the building to the owner.

The following authorities cited in the brief of counsel support their position: Scott v. Cook, 8 Mo. App. 197; Manufacturing Co. v. Burns, 59 Mo. App. 391; Woodruff v. Hovey, 91 Me. 116; Phillips on Mech. Liens (3 Ed.), 137.

On the other hand, it is equally clear that the limitation does not begin to run until the last item called for by the contract is furnished or the last work under it is done. And upon this point the learned counsel for respondent have furnished us a long list of authorities: Livermore v. Wright, 33 Mo. 31; Squires v. Fithian, 27 Mo. 134; Allen v. F. M. & S. Co., 73 Mo. 688; Bruns v. Braun, 35 Mo. App. 337; Miler v. Whitehead, 28 Mo. App. 639; Fulton Iron Works v. M. & S. Co., 80 Mo. 265; Cole v. Barron, 8 Mo. App. 509; Miller v. Wilkinson, 167 Mass. 136; Monaghan v. Putney, 161 Mass. 338; Worthen v. Cleaveland, 129 Mass. 570; Cole v. Uhl, 46 Conn. 296; Nichols v. Culver, 51 Conn. 177; McIntyre v. Trautner, 63 Cal. 429; Gordon Hdw. Co. v. Railroad, 86 Cal. 620; National Stock Yards v. O'Reilly, 85 Ill. 546; Washington Bridge Co. v. Land River I. Co. (Wash.), 40 Pac. Rep. 982; McCarthy v. Groff (Minn.), 51 N. W. Rep. 218.

There is not a great deal of difference between counsel on both sides in their respective views of the law on this subject, but their difference arises on the application of the law to the facts of this case.

From appellant's point of view, the only object in furnishing the elevator with the apparatus in question was to satisfy the board of underwriters and obtain a reduction in the insurance rates which formed a considerable item in the elevator company's expense account. Therefore, appellants argue, when the underwriters were satisfied and recognized the system as complete, when it was put into operation and the insurance rates were reduced, when it was understood by Mr. Moore, acting for the plaintiff, and Mr. Henley, acting for the underwriters, that the work was done with the exception of covering the steam coils for which Mr. Henley took Mr. Moore's prom-

ise, the contract of construction was performed and the statute of limitations began to run. That argument is not without force, and if there was nothing else in the case it would be conclusive.

Appellants in their brief say: "If plaintiff had sued for the contract price (assuming it had not taken the notes) on September 1, which was more than thirty days after the acceptance and approval, could the commission company have defeated the action by showing that the pipes had not yet been covered (if that were true) or that the air gauges had not yet been put on the tanks? That is the test question, and we submit it must be answered in the negative." Stating the question in that form the answer must be as learned counsel indicate. But the question as there put assumes that the owners of the property had accepted the work as fulfilled under the contract except as to the steam coils, and in lieu of the work to be done on them accepted the promise of Moore to do it, and as to the air gauges, waived them.

Under the evidence in this case the air gauges constituted no unimportant part of the apparatus, they were essential to the operation of the system of fire extinguishers, and whilst, because there was an air gauge in the engine room, the system was in condition to be, and was actually put into operation, yet that air gauge was not what was called for by the contract and was found on test to be insufficient to do the work. Then a demand was made on the plaintiff's superintendent, not as a matter of favor, but because the contract required it, to put air gauges on the four tanks at the top of the building and it was done. It is true Mr. Moore had supposed in September that the work was finished, and that the four months statute was running against the lien, he and Mr. Henley both having overlooked the calls in the contract for the air gauges. But when in November his attention was drawn to the fact by Mr. Kalb or Mr. Henley, and he referred to the contract and found it called for the air gauges, he proceeded to have them put in.

Now if we add to the test question put by the learned counsel this incident, the defendant in his plea to the supposed action should say: "Although in September we both supposed the work was finished, yet in November, after a short test, the system proved insufficient because of the absence of air gauges on the tanks which were called for by the contract, and we brought the defect to your attention and asked you to perform the contract in this respect, and you refused" could the counsel's test question then be answered in the negative?

Whilst the obtaining of a rebate in the insurance rates might have been a motive inducing the elevator company to go to the expense of equipping its building with this fire extinguishing apparatus, yet the contract in question is not limited to that consideration and we have no right to conjecture that it was the only motive. The system was designed to protect the elevator from fire, and whilst the protection afforded was appreciated by the board of underwriters, yet it must also have been appreciated by the owner of the property. Men insure their property from loss by fire, but they want not only the indemnity they might obtain in case of loss; they want also protection from loss.

The contract in question requires the system to be constructed to the satisfaction of the board of underwriters, but it also requires that it be done according to plans and specifications. The board of underwriters approved the work July 23, and upon that approval the plaintiff put the machine into operation and supposed it was finished. But there was no approval or acceptance by the elevator company, and nothing done by them to preclude them from demanding further work of construction called for in the contract, unless the mere fact of using the machine can be so construed. When after a short trial the system did not work to the satisfaction of the inspector of the board of underwriters and Mr. Henley approached Mr. Moore on the subject, there was between them, the one in his capacity of inspector for the board of underwriters and the

other as superintendent of the plaintiff, no relation that the latter was bound to regard. He might have well said to the underwriters' man, "I have no contract with you; a single power was given you in my contract to inspect and approve or condemn my work; you approved it and on the faith of your approval I have put the machinery into operation; there our relation ends; I am not in duty bound to ungear this whole system and make changes in it to meet your changed views." But when Mr. Moore is approached in the name of the elevator company, and his attention called to the hitherto overlooked requirements of the contract, and their fulfillment demanded, we have a different proposition. Now, under those conditions could the plaintiff have refused to supply the omitted air gauges, and yet have recovered on his contract? If so, the sole ground on which the plaintiff could stand would be that the elevator company had been in possession of the machine using it since some time in August; for there was no other fact from which an acceptance of the work, as finished, could be inferred. The inspector for the underwriters made no report to the elevator company. He was not bound to do so. He had no relation to it and was concerned only in looking after the interests of the underwriters. If under the conditions above supposed, the plaintiff could have recovered against the elevator company on his contract, it would only be on the theory that the defendant by using the apparatus was estopped to deny that it was constructed according to contract. Without deciding, we may for the argument concede, that the plaintiff could, under those conditions, recover, and that concession brings us as near to appellants' side of their test question as the facts of this case justify. But the plaintiff here is not driven to a replication of estoppel; when the elevator company demanded that the contract be fulfilled by supplying the overlooked omissions, the plaintiff complied with the demand. Although the plaintiff might, according to the appellants' theory, have refused to do the additional work demanded, might have insisted that the

transaction was closed between them, yet yielding to defendant's interpretation of the affair, plaintiff finished the work as the elevator company demanded; now should the elevator company be heard to say that the position it then took and to which the plaintiff yielded, was wrong, that the transaction had really been closed in July, and that what the plaintiff did in compliance with that demand was a mere gratuity? Or with more force it may be asked, shall the elevator company be heard to say that the interpretation of the plaintiff's duty at that juncture which it impressed on the plaintiff and to which the plaintiff yielded and on which it acted to the extent not only of doing the work required but also delaying the filing of its lien, was wrong and the plaintiff must bear the loss?

On November 12, Mr. Kalb and Mr. Schwartz asked an extension of the Schwartz notes which Mr. Moore refused, on the ground that he did not want to impair his lien rights. Counting the work as finished July 23, when it was so pronounced by the inspector of the underwriters, the four months would expire November 23. In that conversation and as an argument for the extension, Mr. Kalb called the attention of Mr. Moore to the fact that his men were at that moment working on the job, and said that the four months time would date from that day and that view was acquiesced in, and the plaintiff acted on it after having upon inquiry satisfied himself that such was the fact, and whilst not formally extending the notes, carried them without action and did not file its lien until March 12. It was also shown that Mr. Kalb solicited Mr. Moore to delay filing the lien as long as possible.

We attach little importance to that incident. As counsel for appellant say, if the time for filing the lien expired before March 12, any agreement, if there was any made, between the parties, on November 12, to extend it would have no effect. Mechanic's lien is a creature of statute and not of contract. The lien in this case depends for its validity, so far as the point now under discussion is concerned, on the fact that the

plaintiff's work under the contract was not completed until November 12. What occurred in the several meetings between the parties above mentioned does not go to show a new agreement between them, but goes to show how they interpreted their original contract, and how they understood the effect of their acts, respectively, in relation to it. It goes to show that the elevator company did not understand that its conduct in putting the machine in operation immediately after the underwriters' inspector had pronounced it finished, was an acceptance on its part of the work as a fulfillment of the contract, or that it had waived any of its rights to a strict performance of the specifications. And it goes to show that the work done by the plaintiff from the seventh to the twelfth of November was not a mere scheme on its part to extend the period for filing the lien. In that view, what occurred at these meetings in November were proper to be considered, but not as making a new contract for extending the period of limitation, and we do not understand the first instruction given for the plaintiff as presenting a different view. That instruction will be referred to later.

It is insisted that the air gauges were put in on November 7, that the job was then finished, and that everything that was done after that date was in the nature of repairs. If that is the fact, then the plaintiff's lien was filed five days after the statutory period had elapsed. But is that the fact? We must remember that in July, when the work was pronounced finished by the inspector of the underwriters, there were water gauges, one on each of the four tanks, and an air gauge in the engine room. When it was discovered that that did not work satisfactorily, and was not as the contract required and the plaintiff undertook to bring the system up to the requirements of the contract in that respect, the plaintiff removed its water gauges already there and put in combined water and air gauges which were regarded as an improvement over the old system and this was approved by all parties. These combination gauges were put in November 7, which was Saturday. On Monday the

ninth it was discovered that one of the glass tubes in one of the new gauges was broken so that the air could not be pumped into the machine; this was remedied on the tenth. On the eleventh a valve in the new work was found to have a sand hole in it, and was unfit for use and a new valve was put in on the twelfth. Therefore, whilst the combination gauges were put in on the seventh, yet as soon as put to test, they were found to have defects and were not rendered efficient until the twelfth. Correcting defects thus discovered was not in the nature of making repairs, but of rendering the original perfect.

We are satisfied from all the evidence in the case that the contract was not finished until November 12, and that the lien was filed in time. We are not overlooking the fact that Mr. Kalb disagrees with Mr. Moore in his recollection of several of the points in issue and we are not deciding which of those two gentlemen probably more correctly recollects the events; those questions, under proper instructions, were left to the jury and we are dealing only with the facts as found by the jury.

The point is presented that the original contract between the elevator company and the Schwartz Brothers Commission Company did not contain any specifications as to this work, but only called for a fire extinguishing apparatus which would be satisfactory to the board of underwriters. That is hardly a correct interpretation of the contract, the language of which is, "Said addition, together with the present elevator to be equipped with a complete sprinkling system for putting out fire by the commission company at its own expense, when arrangements can be made to obtain a sufficient water supply from the city; such system to be satisfactory to the St. Louis Board of Underwriters;" thus the requirement is, first, that it must be a complete system, and, secondly, satisfactory to the board of underwriters. The requirement of a complete system of an apparatus designated is sufficient to sustain a subcontract which calls in detail for items that appear to be appropriate to the construction of such a system.

The trial court was right in overruling the demurrer to the evidence.

II.    The point is made that there were two contracts with plaintiff, one for the fire extinguishing plant in the old building, and the other for that in the addition, and that as the work that was done on the tenth and twelfth of November was on the part of the apparatus located in the new part of the building a lien should be had, if at all, for only the price of the apparatus in that part.    There is no merit in that point.    The contract between the elevator company and Schwartz calls for one "complete sprinkling system" and the evidence shows that whilst the subcontract was, for some reason not apparent, divided into two, yet the plant was, when finished, one system and the gauges and valves in one part were essential to the operation of the machine in every part.

III. Appellants complain of the first instruction given for the plaintiff and of the refusing of the second, fifth, seventh and tenth asked by defendant.

Plaintiff's first instruction:

"1.    The court instructs the jury that if they believe from the evidence that in November, 1896, the General Fire Extinguisher Company was engaged in doing work upon the sprinkler system described in the evidence, and that at the time said work was being done the contract work and material thereof had not been fully completed or accepted by the parties in the contracts as completed, and that it was understood and agreed between the General Fire Extinguisher Company, the Farmers' Elevator Company and Schwartz Brothers Commission Company, that said work was being done by the General Fire Extinguisher Company, under and for the purpose of fully complying with and completing its said written contracts with Schwartz Brothers Commission Company, which have been admitted in evidence, then the court instructs the jury that they must not find that the work under said contracts was completed at an earlier date.    In this connection, you are further

instructed that neither the acts nor agreements or statements of Mr. G. O. Kalb can bind the Farmers' Elevator Company, unless the said G. O. Kalb had authority from the said company or its board of directors to represent them, and that he did act for them and in their behalf."

The complaint of this instruction is that it authorizes a verdict for plaintiff, as appellant's counsel construe it, on the theory that the period for filing the lien was extended by agreement of the parties on November 12. But that is a misconstruction of the instruction. The theory of the instruction is that if the work called for by the contract had not been fully completed or accepted by the parties as such in November, and that it was understood and agreed between them that the work going on at that date was in performance of the requirements of the contract, then it was not completed at an earlier date. Under that instruction the jury before rendering a verdict for plaintiff were required to find that the work going on at that date was what was required by the contract, that the work had not before been finished or accepted as such by the parties to the contract; if those were the facts, the plaintiff was entitled to a verdict independent of how the parties may have understood or agreed as to the effect of what was then being done. The court was justified in including in the instruction the phrase in relation to the understanding and agreement of the parties as bearing on the theory advanced by the defendant that the plaintiff was then doing something to save its lien.

Defendant's second instruction refused was to the effect that if the apparatus was, on or about July 25, substantially completed and tendered by the plaintiff and so accepted by all the parties and approved by the board of underwriters except as to covering steam pipes, as to which the plaintiff's promise to cover them and supply other deficiencies that might be discovered, was accepted, and if Schwartz and the plaintiff from and after that time recognized the contract price as an accrued and existing obligation, then the time for filing the lien began

to run prior to November 12, although the work was done on November 12 to complete certain air gauges called for by the contract which had been omitted by inadvertence.

The court of its own motion gave this instruction: "The indebtedness accrued when the work called for by the contract was completed, or when the parties to the contract themselves accepted the work as complete. If, therefore, you find from the evidence that the said contract in regard to the furnishing of the fire extinguishers was completed, and the last work was done, and the last material was furnished under the said contract, prior to November 12, 1896, or that the fire extinguisher plant was accepted by all the parties in the contracts as complete prior to November 12, 1896, then plaintiff is not entitled to a mechanic's lien in this case against the property of the Farmers' Elevator Company."

This instruction of the court contains all that it was proper to give in the defendant's refused instruction, leaving out the reference to the recognition of the debt by the Schwartz Brothers for which they had given their notes in June and which did not affect the lien.

Defendant's fifth and seventh instructions refused were to the effect that if the work done November 12 was in the nature of repairs it did not affect the time for filing the lien. This point was fully covered by other instructions given for defendant.

The tenth instruction refused was to the effect that if instead of putting air gauges on the tanks as called for in the contract, the plaintiffs put one air gauge in the engineer's room to answer the same purpose and that was accepted by the elevator company and the board of underwriters in July as a full compliance with the contract, then the subsequent work of putting on air gauges did not extend the time of filing the lien. That was simply ringing the changes on a point on which the jury had already been fully instructed.

There was no error in the instructions.

IV.   The defendant the St. Louis Trust Company is interested in this matter by being a trustee in a deed of trust executed by the elevator company to secure certain bonds issued by it.   But the deed was not delivered until April 30, 1896, after the plaintiff's contract was made and the work under way.   The trust company's interest in the case does not impair the plaintiff's right to its judgment.

There is no error in the record and the judgment of the circuit court is affirmed.   All concur.