**CHARLES D. JONES COMPANY, INC., Respondent,**

v.

**CLIFF MANOR, INC., International Energy Group of Kansas, Inc., Home State Bank of Kansas City, Kansas City, Kansas, and Jim T. Reid, Appellants.**

**No. WD 34322.**

Missouri Court of Appeals, Western District.

March 27, 1984.

Ronald S. Weiss and Jerald S. Enslein, Kansas City, for appellants; Berman, De-Leve, Kuchan & Chapman, Kansas City, of counsel.

M.A. Thalman, Platte City, for respondent.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

PRITCHARD, Presiding Judge.

The trial court, sitting without a jury, determined that respondent was entitled to a mechanic's lien (subordinate to a first mortgage deed of trust of defendant, Home State Bank of Kansas City, Kansas) for the delivery and installation of temperature control equipment in Cliff Manor's nursing home. Cliff Manor contends (1) that the equipment was not lienable under § 429.010, RSMo 1978, because it was not a fixture; (2) that it was not lienable because it did not work and for that reason it did not constitute an improvement on the realty under § 429.010; and (3) that respondent did not timely file its mechanic's lien statement under § 429.080.

Respondent was a wholesaler of temperature control equipment, which was here ordered by the International Energy Group of Kansas, Inc., for a total of $17,626.17, which respondent's comptroller testified was a fair, reasonable and competitive price in the industry. International's Deon Hockensmith was involved in the installation of the equipment, a load shedder, multiplexor and transmitter, by attaching them to a piece of plywood mounted on the wall of the nursing home, and by "hard wiring" the electrical connections with conduit and electrical cable into the existing wiring system. "Hard wiring" means that the appliance is not plugged in, but is directly connected with electrical cable, and the wiring is tied together by soldering or some other type of connection. In order to disconnect hardwired equipment, it could not just be unplugged, but one would have to disconnect wires, and in the case of the load shedder, which is a device programmed to

turn off appliances at certain intervals, the wires attached to it from the main power box would have to be removed with a screwdriver and the conduit removed from the cabinet. Receiving relays were screwed and bolted onto each heating and air conditioning unit and were hardwired into the internal wiring of such units. Hockensmith further testified that all of the material was incorporated into the Cliff Manor project and was operating properly by the middle of July, 1981.

Ms. Lucy Webb, who was in charge of operation of Cliff Manor, testified that International Energy called appellant in late March, 1981, to install an energy efficient system in the nursing home to monitor the heating and air conditioning unit at peak overload times, at a proposed saving guarantee of $15,000 per year, and an estimated savings of $19,000 per year. Cliff Manor did not own the equipment but leased it from Home State Bank which was to pay International Energy for it once it had been installed. The equipment was not operating at the time of trial, August 30, 1982, because it had been disconnected due to complaints from patients and housekeeping people that they were being shocked by the unit when they cleaned the filters. Ms. Webb acknowledged that a maintenance man cut the wires which were attached to the unit which was brought to court as an exhibit. Ms. Webb testified that the equipment was inoperable and had no value, but respondent's comptroller testified earlier that if the equipment were not allowed to function properly, it would have no value.

It is clear that the trial court was not wrong in adjudging that the monitoring equipment was a fixture and thus was a lienable item. The equipment was attached to the building and its electrical system by "hard wiring", bolts, screws, and to a piece of plywood attached to a wall, so as to become a part of the realty. See *Sears, Roebuck & Co. v. Seven Palms Motor Inn*, 530 S.W.2d 695, 696–697 (Mo. banc 1975), where traverse rods attached to the wall above windows, and drapes attached to the rods, were held to be fixtures. The Seven

Palms case cited and quoted *Crane Co. v. Epworth Hotel Construction and Real Estate Co.*, 121 Mo.App. 209, 219, 98 S.W. 795, 797 (1906), " 'Of [the elements of annexation, adaptation and intent] in modern times the latter two are more important than the one relating to the method by which the chattel is attached to the freehold. Such annexation, though slight and easily displaced, will not prevent an article becoming a fixture which is adapted to the proper use of a building, and which was placed therein by the owner with the intent of forming a part of the special object and design for which the building was constructed.' " In accordance with that rule, Cliff Manor's placing the energy efficient equipment was adapted to a proper use of the building, i.e., the reduction in the cost of fuel and electricity, and it was obviously done by Cliff Manor with the intent to accomplish that purpose. Furthermore, as to the first element, the evidence is that the equipment was sufficiently annexed to the building (by hardwiring, affixing to a plywood panel, bolts, screws, and conduits, so as not to be easily removed). Compare these further cases: *J.R. Meade Co. v. Forward Construction Company*, 526 S.W.2d 21, 33[31] (Mo.App.1975) [wall-to-wall carpeting, serving as a not easily removed finished floor was lienable]; and *Drew's Hardware & Appliance Co. v. Willis Housing Projects*, 268 S.W.2d 596, 599[2] (Mo.App.1954) [washing machines affixed by bolts to the concrete floor, adapted for use in an apartment building, intending that they become permanent fixtures therein, were lienable]. The trial court's ruling is in accord with the further rule that the mechanic's lien statute was designed to be remedial for the purpose of providing to mechanics and materialmen security for furnished services and material, and it is therefore to be construed in their favor as much as its terms will permit. *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.*, 513 S.W.2d 365, 371 (Mo. banc 1974). Appellant's first contention is ruled against it.

As to the second contention, Hockensmith testified as stated above that all of the material was incorporated into the Cliff Manor project and was operating by the middle of July, 1981, and to his knowledge it was operating properly. He did not complain to respondent on behalf of International Energy about its operation except for two replaced relays. Ms. Webb testified that Cliff Manor removed the equipment because it was shocking people, that it was inoperable and had no value. Respondent's comptroller testified that if the equipment were not allowed to function properly (as by its removal), it would have no value. Clearly, as a matter of intent, Cliff Manor procured the equipment for the purpose of lessening its energy costs, and the price of the equipment would be paid for over a number of years as the evidence shows. There was substantial evidence that at the time of installation of the equipment, it improved the realty and enhanced its value. See *Utley v. Wear*, 333 S.W.2d 787, 792 (Mo.App.1960), where it was said, "In respect to whether the improvements *actually* enhance the value of the premises as events finally work out, it is a question of what the owner can be said to have intended at the time the premises were improved. That his judgment was bad, or that he was disappointed by later events, is of no moment. (Citing cases.)" The second contention is overruled.

As to the third contention, Cliff Manor bases it upon the testimony of Ms. Webb that the equipment was installed by June 11, 1981, and infers from the testimony of Hockensmith that it would take but ten days to install the equipment, that it would have been completed about June 9, 1981. The lien statement was not filed until October 14, 1981, which Cliff Manor says is beyond the four-month period of limitation of § 429.080. The argument overlooks the further testimony of respondent's comptroller that the relays billing was on July 17, 1981, and that the last date respondent delivered any materials on the project was on that day. Hockensmith installed that material sometime after that. The *J.R. Meade* case, supra, page 28, holds that the language of the statute for filing time, " * * * within four months after the indebtedness shall have accrued" means "when the materials are finally furnished or finally installed upon the building." See also *General Fire Extinguisher Company v. Schwartz Brothers Commission Company*, 165 Mo. 171, 65 S.W. 318, 321 (1901), where the court said, "On the other hand, it is equally clear that the limitation does not begin to run until the last item called for by the contract is furnished, or the last work under it is done." The trial court was not required to accept Cliff Manor's evidence that the installation was completed by June 9th or 11th of 1981. Respondent's evidence was substantial that the work was completed in July, 1981, and therefore the lien statement was timely filed within four months thereafter.

The judgment is affirmed.

All concur.