**SHAMROCK BUILDING SUPPLY, INC., Plaintiff/Appellant,**

**v.**

**ST. LOUIS INVESTMENT PROPERTIES, INC., Defendant/Respondent.**

**No. 61612.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 8, 1992.

Ted Frank Frapolli, St. Louis, for plaintiff/appellant.

Ted Lucas, Richard A. Wunderlich, St. Louis, for defendant/respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Shamrock Building Supply, Inc. (hereinafter "Shamrock"), appeals an order of the trial court granting summary judgment in favor of respondent, St. Louis Investment Properties, Inc. (hereinafter "SLIP"). We affirm in part and remand in part.

From late June until late September of 1988, Shamrock supplied building materials to the Rufkahr Platt Group (hereinafter "RPG") for the construction of display homes on lots 5 and 6 of a development labelled The Courtyards of Sunset Hills. The materials supplied consisted largely of windows, screens, grills, and doors. On August 1, 1988, Shamrock and RPG entered a contract whereby Shamrock would provide these materials for the display homes on lots 5 and 6 for $22,755.60. Payment was to be made at the time of sale or transfer of these display homes, two years from the date of the contract, or upon

termination of the contract, whichever occurred first.

On July 20, 1990, respondent SLIP purchased legal title to lots 5 and 6 of The Courtyards at a foreclosure sale. Ten days before this acquisition, attorney for appellant sent a letter to the attorney for SLIP advising him that a mechanic's lien for the unpaid $22,755.60 was going to be filed by Shamrock on August 2, 1990. On July 16, 1990, appellant's attorney mailed a notice of intent to file a mechanic's lien to attorney for respondent.

On August 22, 1990, appellant filed its first mechanic's lien statement seeking to enforce a lien on lots 5 and 6. On September 6, 1991, Shamrock filed its first amended petition seeking enforcement of the mechanic's lien for recovery of the $22,755.60, plus interest. The named defendants included Tracy J. Rufkahr, Brent Platt, and Cheryl Wroth of RPG, as well as SLIP. Respondent, SLIP, filed a motion for summary judgment shortly thereafter. Said motion was granted on February 4, 1992. Appellant filed a motion requesting the court to reconsider this February 4th order. On February 26th the court denied appellant's motion. This appeal followed.

■■■ At the outset, it should be stated that our review of a grant of summary judgment requires that we view the record in the light most favorable to the party against whom summary judgment was entered. *Meyer v. Enoch*, 807 S.W.2d 156, 158 (Mo.App., E.D.1991). In so doing, we must determine whether any genuine issue of material fact exists requiring a trial. *Id.* If the summary judgment can be affirmed as a matter of law under any theory, we will uphold it. *Id.*

■■■ In this appeal, appellant raises two issues for review. Initially, appellant asserts the trial court erred in finding that the mechanic's lien was not filed within the six month statutory time period. Appellant argues that the six months within which the lien needed to be filed did not begin to run until two years after the date of the contract.[1] Respondent argues that the six

---

1. The applicable statute here, RSMo § 429.080     (1986), reads as follows:

month time period began running on the last date that the materials for lots 5 and 6 were delivered.

■ As appellant points out in its brief, the mechanic's lien statute serves a remedial purpose by providing security to materialmen and mechanics for furnished services and material. *Charles D. Jones Co. v. Cliff Manor, Inc.,* 668 S.W.2d 613, 615 (Mo.App., W.D.1984). As such, the statute should be construed in a manner favorable to mechanics and materialmen as much as the terms permit. *Id.*

■ However, appellant incorrectly asserts that the particular issue before us has never been decided by Missouri Courts. In fact, it has. It has been a long standing rule in this State that the word "accrued" in the mechanic's lien statute means when the indebtedness becomes complete; when the last labor is performed or the last material is furnished under an agreement. *The Bolen Coal Company v. Ryan,* 48 Mo.App. 512, 516 (1892). It has further been acknowledged that the determination as to when a debt accrues is much different from the determination as to when a debt becomes due. *Mfg. Co. v. Burns & Co.,* 59 Mo.App. 391, 393–4 (1894). Though complete, a debt cannot be sued upon until it becomes due. *Id.* at 394. Using this reasoning, the Kansas City Court of Appeals, in a 1913 case, found that "where the contract under which a lien is claimed provides that the debt shall not become due until after the expiration of the statutory time for bringing suit to enforce the lien, the right to a lien is regarded as waived by the vendor." *Dierks & Sons Lumber Co. v. Pearman,* 172 Mo.App. 107, 157 S.W. 970, 971 (K.C.D.1913).

It shall be the duty of every original contractor, every journeyman and day laborer, and every other person seeking to obtain the benefit of [these] provisions ... within six months after the indebtedness shall have accrued to file with the clerk of the circuit court of the proper county a just and true account of the demand due him ... which is to be a lien upon such building or other improvement, ...

Our application of this rule to the facts before us establishes that appellant, in order to have an enforceable lien against respondent, must have filed such lien in March of 1989, six months after the last delivery to lots 5 and 6. Based on the reasoning above, respondent's debt to appellant accrued upon the date of the last delivery to lots 5 and 6, though the due date for the debt was some two years later. As the statute requires a mechanic's lien to be filed within six months "after the indebtedness shall have accrued," appellant's mechanic's lien was not filed in a timely manner and is, thus, unenforceable under this theory. Point denied.

■ Appellant next suggests the mechanic's lien was timely in that Shamrock had a running account with RPG and had provided materials to lots contiguous with lots 5 and 6 under one general contract.[2] Appellant argues that materials were supplied by Shamrock for not only lots 5 and 6, but also lots 9, 10, and others unnamed. Appellant asserts that the final delivery of materials to said lots occurred on May 2, 1990. This being so, says appellant, the October, 1990 mechanic's lien was filed well within six months of that May date.

The main question here is whether or not the materials supplied by Shamrock to RPG were delivered under one general contract or under two distinct contracts. Considering our standard of review in this case, we find that a remand is necessary for a determination on this point.

■ In order to utilize a mechanic's lien under RSMo § 429.040 covering work or materials supplied to contiguous lots, the materialman must show the existence of a contract between he and the owner or developer of the land. *Stewart C. & M. Co.*

2. Appellant points us to RSMo § 429.040 (1986) which reads:
    When the improvements consist of two or more buildings, united together and situated upon the same lot or contiguous lots, or separate buildings upon contiguous lots, and erected under one general contract, it shall not be necessary to file a separate lien upon each building or lot for the work done or materials furnished in the erection of such improvements.

*v. James H. Stanton Const. Co.,* 433 S.W.2d 76, 79 (Mo.App., K.C.D.1968). Appellant supplied a copy of the contract specifically covering lots 5 and 6. Additionally, appellant's First Amended Petition included an Amended Mechanic's Lien stating that all items supplied by Shamrock for all lots of the Courtyards were supplied under one Agreement with a continuing account. The affidavit of Tom Walsh, President of Shamrock, was also attached asserting that the information in the amended mechanic's lien was accurate. Because our review of an entry of summary judgment requires that we accept all of this as true, we find that a remand is necessary to allow the finder of fact to determine the existence or nonexistence of a general contract.

Based on the foregoing, we affirm in part and remand in part for the trial court's determination as to whether there was one general, or two distinct, agreements covering the supply of materials to various lots in the Courtyards of Sunset Hills development.

KAROHL, C.J., concurs.

SMITH, J., dissents in separate opinion.

SMITH, Judge, dissenting.

I respectfully dissent. I agree with the majority opinion that the debt accrued when the last labor was performed or the last material was supplied to the lots in question. I am unable to agree with the majority that the "one general contract-contiguous lot" statute may serve to extend the time for filing these liens.

I have serious reservations that the contract here serves as a general contract within the meaning of § 429.040, RSMo 1986. But it is not necessary to address that issue. That section was enacted in substantially its present form in 1877. In 1892 the Kansas City Court of Appeals decided *The Bolen Coal Company v. Ryan,* 48 Mo.App. 512 (1892). There the court addressed squarely the exact question presented in this case. It framed the question and its answer as follows:

The meaning and true intent of plaintiffs' contention is that, notwithstanding one or more of the buildings mentioned in the contracts are such as cannot be covered by the lien, the time of finishing them shall be tacked to the time when those were finished which are covered by the lien. Thus the work or material on the unlienable buildings must operate to save or extend the time limited for the lienable buildings. We cannot allow this. If we did, it would be against the spirit of the law, and bring about unreasonable results. One contract might provide for the erection of a small structure at one place and a large structure at a distant place; the small one being completed in two months and the large one in two years, the contract would not be performed until the completion of the large structure, yet it ought not to be supposed that the statute contemplates that a lien may be had against the small structure within six months after the completion of the large one.

*Id.* at 516.

Plaintiff here asserts no lien against any lots other than five and six and the record indicates that it has been fully paid for any labor or materials utilized in buildings on contiguous lots. Those lots are non-lienable by plaintiff. *The Bolen Coal* case squarely holds that in that situation the contiguous lots may not be utilized to extend the time limitations for filing the lien against lots five and six. *Bolen Coal* has not been overruled and constitutes the only authority in Missouri on the issue. I see no reason not to follow it.

I would affirm the judgment of the trial court.