CONTINENTAL ELECTRIC COMPANY,
Appellant,

v.

EBCO, INCORPORATED, and Ford Motor Company, Respondents.

No. 23688.

Kansas City Court of Appeals.
Missouri.

Feb. 4, 1963.

Robert W. Cook, Linde, Thomson, Van-Dyke, Fairchild & Langworthy, Kansas City, for appellant.

Warren E. Slagle, Slagle & Bernard, Kansas City, for respondents.

BROADDUS, Presiding Judge.

This is an action brought by plaintiff, Continental Electric Company, against Ebco, Incorporated, a sub-contractor, and Ford Motor Company, the property owner, to establish and enforce a materialman's lien. The case was tried to a jury which returned a verdict in favor of plaintiff against the defendant Ebco, Incorporated, in the sum of $7,606.44 and against the defendant Ford Motor Company establishing a lien in like amount against the property of said defendant. Judgment was entered accordingly. The defendant Ford Motor Company moved the trial court to have the verdict and judgment set aside and to have judgment entered for it in accordance with its motion for directed verdict or, in the alternative, to grant it a new trial. The trial court entered its order sustaining both motions from which order plaintiff has duly appealed.

The defendant-respondent, Ford Motor Company is the owner of a manufacturing plant and premises in Claycomo, Clay County, Missouri. During 1959 certain additions and improvements were made to the plant under a general contract with the H. F. Campbell Construction Company, of Detroit, Michigan. Southeastern Electric Company, also of Detroit, was a sub-contractor under Campbell. The defendant, Ebco, Incorporated, of Kansas City was, in turn, a subcontractor of Southeastern and performed a portion of the electric work.

Plaintiff is a supplier of all types of electrical materials. During 1959, Ebco ordered from plaintiff, on open account, electrical materials totalling $12,631.63 for use on the Ford job. At the completion of the job, there remained due plaintiff from Ebco the sum of $8,008.20 for materials sold to Ebco for the Ford job during the period from May 13, 1959 to September 10, 1959.

On December 8, 1959, plaintiff served upon the plant comptroller of Ford's Claycomo Plant, its notice of intention to file a mechanic's lien on the premises.

On December 23, 1959, plaintiff filed its mechanic's lien statement in the office of the Circuit Clerk of Clay County. The statement set forth the amount claimed of $8,008.20, and attached, as a part of said statement, copies of plaintiff's invoices to Ebco comprising the account and totalling the above figure. The statement further contained, as a part thereof, the affidavit of plaintiff's duly authorized attorney and agent that the foregoing statement was "a just and true account of the demand due Continental Electric Company for materials furnished by it, upon, to and for the buildings and improvements hereinbefore described after all just credits have been given * * *."

On February 5, 1960, plaintiff filed its petition in the Circuit Court of Clay County, naming both Ebco and Ford as parties defendant. On the same day, summons was issued out against both defendants and return duly made as to the defendant Ford. Summons to Ebco was directed to the Sheriff of Jackson County, for service on that defendant at its principal office at 1009 East Truman Road, Kansas City, Missouri and returned "non est" by the Sheriff on February 10, 1960. On October 10, 1960, plaintiff directed the Clerk of the Clay County Circuit Court to issue out an alias summons against Ebco and for service to be made upon the registered agent of said company. Thereafter, service was duly obtained and the return made on October 14, 1960.

The case proceeded to trial before a jury on December 11, 1961, the defendant Ebco defaulting. The plaintiff's case consisted of the presentation of documentary evidence and oral testimony to prove the amount of its claim against the defaulting defendant and delivery and use of the materials comprising the claim by Ebco in the performance of its contract at the Ford Motor Company Plant

The claim was proved by the testimony of plaintiff's credit manager, Mr. Donovan Staton. He testified that between May 13, 1959, and September 10, 1959, plaintiff sold the materials listed on the lien statement to Ebco, Incorporated; that his company kept written records in connection with these sales; that he knew when an order came in from Ebco whether the materials ordered were intended for the Ford job because Ebco assigned its own job number, No. 1040, to the Ford job, and this number appeared on all purchase orders from Ebco for materials intended for that job; that Exhibit 27 was the ledger card, prepared in plaintiff's credit department reflecting Ebco's entire account, including all payments received from Ebco on the Ford job and credits, if any, posted to the account. Mr. Staton further testified that Exhibit 27 was a business record of plaintiff, prepared at or near the time of the transactions shown thereon and that it was kept and maintained under his custody and control in his position as credit manager of plaintiff.

Plaintiff's witness, Lawrence Duckworth, former Vice-President of Ebco, identified his signature appearing on Exhibits 3, 7, 8, 9, 13, 15 and 16 and testified that such signatures indicated he had received materials listed thereon on behalf of Ebco and that he, thereafter, delivered such materials to the Ford job to be installed in that job.

Plaintiff's witness, Franklin Schooler, former Secretary-Treasurer of Ebco, identified his signature appearing on Exhibits 5, 6, 20 and 21 and testified that such signa-tures likewise indicated that he had received the materials listed thereon, and that he, thereafter, delivered such materials to the Ford Plant for use in the job there being performed.

Plaintiff's witness, Roy C. Alberts, testi-fied that he was the job superintendent for Ebco at the Ford Plant from about the 1st of May, 1959, until around the 26th or 27th of August of that year, and that during that time he received "practically all of the ma-terials unless I was somewheres other than in the office." Mr. Alberts identified his signature appearing on Exhibits 30 to 39 inclusive; testified that such signatures in-dicated that he had received the materials listed thereon on behalf of Ebco, and that to the best of his knowledge all of such materials "went into project that the Ebco Corporation had a contract to do, which was the extension of the Ford Plant."

Plaintiff's witness, Henry J. Beckerle, testified that he was the Ebco foreman on the Ford job; that part of his duties was to check in materials delivered on the job site and after the materials were checked in, "to the best of my knowledge, they was used on the job." Mr. Beckerle likewise identified his signature appearing on Ex-hibits 40, 41 and 42, and testified that the same indicated the materials listed thereon were received by him, and, thereafter used in the Ford job.

In the presence of the jury defendant's counsel admitted the receipt on the job site of the materials listed on and shown by Exhibits 31, 32, 33, 34, 35, 36, 37, 38, 39, 41 and 42. These materials totalled $5,508.59.

Plaintiff offered in evidence the stipula-tion signed by the parties which recited that "B. The prices for materials shown on the lien statement were fair and reason-able." Plaintiff also offered in evidence certain interrogatories submitted to defend-ant and the answers thereto. In one of these answers defendant admitted that "all work performed by Ebco was performed satisfactorily."

At the close of its evidence, plaintiff asked leave to amend its petition by interlineation to decrease its prayer from $8,008.20 to $7,606.44 to conform to the evidence, and leave to so amend was granted by the court. As plaintiff's counsel stated: "The reduction in the amount is due to the fact that certain of the plaintiff's exhibits, which were hoped to be placed into evidence did not contain a signature although it has been shown that the materials were sold and therefore to not mislead the Court and the jury in the amount of the materials actually received and used on the job, the plaintiff is decreasing its prayer in this amount."

Defendant offered no evidence. At plaintiff's request the court gave Instruction 1, and, on behalf of defendant Instructions 2, 3, 4, 5 and 6. As stated, the jury returned a verdict in favor of plaintiff, which the court later set aside and plaintiff appealed.

Defendant filed a motion to dismiss the appeal for alleged failure of plaintiff's brief to comply with certain of the civil rules. In the exercise of our discretion, we overrule it.

█ Plaintiff first contends that the trial court erred in sustaining defendant's motion to have the verdict and judgment for the plaintiff set aside and to have judgment entered for it in accordance with its motion for directed verdict because jurisdiction of the subject matter of this suit was properly in the trial court.

Section 429.170 RSMo 1959, V.A.M.S., sets forth the applicable limitation period in mechanics' and materialmen's lien cases: "All actions under sections 429.010 to 429.-340 *shall be commenced within six months after filing the lien,* and prosecuted without unnecessary delay to final judgment; and no lien shall continue to exist by virtue of the provisions of said sections, for more than six months after the lien shall be filed, unless within that time an action shall be instituted thereon, as herein prescribed."

(Emphasis added.) Rule 53.01, Missouri Rules of Civil Procedure, V.A.M.R., provides: "* * * The filing of a petition and suing out of process therein shall be deemed the commencement of a civil action."

Plaintiff filed its lien statement on December 23, 1959, and its petition for enforcement of Mechanic's Lien on February 5, 1960. Thus the period of time between the two filings was well within the six month limitation period prescribed by the statute. *Both necessary parties,* the Ford Motor Company and Ebco, Incorporated, *were named as co-defendants.* Service of process was immediately issued out against both defendants. Summons was served on the defendant Ford Motor Company or or about February 10, 1960, and returned "non est" as to the defendant Ebco on or about the same date. On October 14, 1960, service was obtained on Ebco by serving summons and petition on that company's registered agent. The defendant Ford contends, and the trial court so ruled in sustaining the defendant's after-trial motion, that the court was without jurisdiction of the subject matter of the action because no new or additional summons was issued out against Ebco, Incorporated, "for a period in excess of six months after the first summons was issued and after it was returned unserved." Thus, the defendant would have the court read into the relevant statute of limitations *another* six months period running from the date the first summons is returned unserved within which it is incumbent on a lien claimant to obtain service on all the named defendants or have his lien defeated as a matter of law. This is not the law in Missouri because a suit is commenced by "the filing of a petition and suing out of process thereon." Rule 53.01, supra, and the statute of limitations is thereby tolled.

The rule is clearly stated in City of St. Louis v. Miller et al., 235 Mo. 987, 145 S.W. 2d 504, 505:

"It has been repeatedly held by our Supreme Court, and the Courts of

Appeals as well, that a suit in a court of record is commenced, within the meaning of this section, so as to save the suit from the bar of the statute of limitations, *when the petition is filed, even though process is not thereafter issued until the period of limitations has run.*" (Emphasis added.)

The instant case is not one *where an attempt was made to bring in a necessary party after the limitation period had run. Here both parties were properly joined in the petition.* This very question was decided by this court in Henry Weis Cornice Co. v. J. B. Neevel & Sons et al., 187 Mo. App. 496, 174 S.W. 159, a mechanic's lien case resulting in a judgment for plaintiff in the trial court. Plaintiff was a subcontractor of J. B. Neevel & Sons Construction Company which had contracted with the co-defendant to erect a building upon land owned by the latter. Although J. B. Neevel was sued within the proper time, there was no service upon it, but it entered its appearance and filed an answer, though this was not until after the time limited by the statute for bringing suits. On appeal the defendant insisted that plaintiff's lien had failed on this ground. This court affirmed the judgment for plaintiff and held: "The law is that the action must be brought within 90 days after the lien is filed, and that when brought by a subcontractor, the original contractor must be made a party as well as the property owner. It has been held that if the original contractor is not sued he cannot be made a party after the time limited for [bringing] suit has expired (citing cases). But that objection does not appear in this case. *Here the original contractor was made a party to the action, but service was not had, nor did it enter its appearance by answering, until after the limitation period had run. The time of bringing the action was the filing of the petition, and not the date of service or entry of appearance.*" (Emphasis added.)

Defendant cites no decision which conflicts with our holding in the above case. Most certainly neither plaintiff nor its

attorneys obstructed or deliberately delayed service of process on the defendant Ebco. And such slight delay as did occur in no way interrupted the continuity of this case, caused any unnecessary delay in the determination of the issues, or in any way prejudiced the rights of the defendant Ford Motor Company.

 A primary question presented by this appeal is whether or not plaintiff's lien statement contained a "just and true account" of the demand due. Attached to and made a part of the lien statement are invoice copies which cover each and every item comprising the demand. These invoice copies show, among other things, the date the materials were shipped, a complete description of each and every item making up the particular invoice, including a unit price for each item, and the total price of all the items listed.

The specific issue here is whether or not by listing only those materials comprising its claim and by not itemizing payments made for other materials ordered on the same job, plaintiff so far departed from the requirements, of the statute as to defeat its lien as a matter of law.

The pertinent provision of section 429.080, specifying the account which must be filed by all lien claimants, requires that the same shall be: " * * * [A] just and true account of the *demand due* him or them *after all just credits have been given * * *.*" (Emphasis added.) The words are clear, unambiguous and explicit. The statute contains no language requiring or implying, that a lien claimant must do more than state his demand *after* allowing just credits. Had it been the legislative intent that a lien claimant could only seek relief under the Mechanics' Lien Law by filing a statement listing each and every minute item sold on a particular job, whether or not those items had already been paid for, and listing in detail the payments made for those other items not comprising the claim, then the Legislature certainly could, and would, have so provided. It has not seen fit to do so for

one obvious reason—the very intent of the statute would be defeated, that being, "to secure mechanics and materialmen by giving them a lien upon property they have contributed to improve or create * * * and * * * to avoid unfriendly strictness and mere technicality," Putnam v. Ross, 46 Mo. 337. That it is incumbent on a lien claimant to file a "just and true account of the demand due him" is true. But as stated in Hydraulic Press Brick Co. v. McTaggert, 76 Mo.App. 347, 353:

> "It was not, however, the object of the statute to create a Procrustean rule of literal exactitude in the filing of lien accounts. If such were its purpose, a claim, otherwise valid and enforceable under the mechanic's lien law, would suffer defeat from errors of computation, inadvertence or mistake, or a mere preparation of the account, irrespective of the good faith of the lienor."

A leading case on the question of the sufficiency of a lien account is Mitchell Planing-Mill Co. v. Allison, 138 Mo. 50, 40 S.W. 118, where it is said:

> " * * * The account which this law contemplates is such a statement of the claim as fairly apprises the owner and the public of the nature and amount of the demand asserted as a lien. * * * It may be all on one side, or mutual in its showing. * * *
>
> " * * * *The lien claim is not itself a pleading under our law.* McMurray v. Taylor (1860) 30 Mo. 263. *All that is required therein is a substantial compliance with the statute declaring what that claim shall contain.* Grace v. Nesbit (1892) 109 Mo. 9, 18 S.W. 1118. * * *
>
> " * * * If the claim comes into court, it is then time enough to require all the particulars that may be necessary to maintain or defend the action." (Emphasis added.)

To the same effect is the recent holding of this court in the case of Wadsworth Homes, Inc., v. The Woodridge Corporation, Mo.App., 358 S.W.2d 288:

The legal description of defendant's premises contained in plaintiff's lien statement was taken from the warranty deed by which the defendant took title to the property. It has been held that a description of property in the lien statement which is the same as the description in the deed to the owner is sufficient. Joplin Cement Co. v. Greene County Building & Loan Association, 228 Mo.App. 883, 74 S.W.2d 250.

Section 429.080 requires only that a claim shall contain " * * * a true description of the property, or so near as to identify the same, upon which the lien is intended to apply * * *."

It is obvious that plaintiff was exercising the utmost good faith in attempting to furnish a description which would, as nearly as possible, identify the property on which its lien was intended to apply. The defendant was at all times aware of that part of its property to which the improvements were made, and fully able to identify the premises to which the lien was intended to apply. This is the criterion of the Missouri rule as set forth in De Witt v. Smith, 63 Mo. 263:

> " * * * As to what will be regarded as a sufficient description to sustain a mechanic's lien, the general rule seems now to be, that if there appear enough in the description to enable a party familiar with the locality, to identify the premises intended to be described with reasonable certainty to the exclusion of others, it will be sufficient."

A later restatement of this rule is found in Hertel Electric Co. v. Gabriel, Mo.App., 292 S.W.2d 95, 99.

Whether or not materials were delivered and used on the job within four months of the date of plaintiff's lien statement we only need to refer to plaintiff's Invoice No. 450,783. The materials listed thereon were shipped via plaintiff's delivery

on August 25, 1959. The "Warehouse Copy" of the invoice (Exhibit 42) was identified by plaintiff's witness, Henry J. Beckerle, who testified that his signature appearing thereon evidenced the fact that he had received said materials on the Ford job site. He further testified that, thereafter, the materials were used in, and became a part of, the improvements made by Ebco, Incorporated, at the Ford Plant.

Plaintiff's Exhibit 42 clearly shows that the materials listed thereon were shipped via "our del" on "8–25", and contains the signature of "H. J. Beckerle", foreman at Ebco, who receipted for same. The Exhibit is documentary evidence of the fact it was offered to prove. It is self-evident that these materials were delivered on the Ford job within four months of filing the lien statement on December 23, 1959.

■ We have heretofore set out the evidence somewhat in detail. Certainly the evidence when viewed in a light most favorable to plaintiff was sufficient to warrant submission of the case to the jury. There is no dispute that plaintiff complied with the statutory steps required to perfect its lien. Notice was served upon the owner of the property improved. The lien statement was filed within four months from the date of the last item of the account. Suit was filed within six months after filing the lien statement. The lien statement was introduced in evidence. Documentary evidence, together with the testimony of five witnesses, was presented to prove the amount of the materials comprising the lien, and the fact that such materials were used by Ebco in the performance of its contract at the Ford Motor Company Plant. Defendant admitted that the prices charged for these materials were "fair and reasonable". In our opinion, the trial court's action setting aside the verdict and entering judgment for defendant was clearly erroneous.

■ Did the trial court also err in sustaining defendant's alternative motion for a new trial? We think it did. The motion contains numerous allegations of error. All lack merit. Against Plaintiff's Instruction 1, which was a verdict directing instruction, the motion directs twenty-one complaints. It would unduly lengthen this opinion to point out why these assignments set forth no error prejudicial to defendant. The Instruction requires the jury to find every *essential* element of the plaintiff's case and that is all that is necessary. McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S.W. 2d 37.

Plaintiff concludes its brief with the following statement: With the thoughts so clearly expressed therein we are in full accord.

"With all due respect to the trial court, it is impossible to find in the record among the numerous grounds of error assigned by the defendant in its after-trial motion, and among those adopted by the trial court sustaining said motion, one ground that is not based upon mere technicality. One ultimate fact remains which cannot be disputed: There is now incorporated in the buildings at the Ford Motor Company Plant electrical materials sold by this plaintiff in the sum of $7,606.44 for which plaintiff has not been paid. This is not an allegation. It is an established fact found by the jury, based on the sworn testimony in open court of four witnesses who were present in person, oversaw the installation of the materials, and who were the only persons who could have testified to such fact. Here is a case where a materialman has, in utmost good faith, attempted to protect itself and to seek its remedy under the very statute enacted for that purpose. Its materials were used to enhance the value of an owner's property. It was not paid. The steps required by the statute were followed. At great expense, the materialman prosecuted its case and presented same to a jury which found the issues in its favor. If, under the laws of this State, a lien claimant is held to the strict proof and

technicality demanded by the trial court's order in this case, then, the phrases 'good faith', 'substantial compliance' and 'liberality' have no meaning and the very intent of the legislative enactment will be defeated."

The judgment in favor of defendant Ford Motor Company is reversed and the order sustaining defendant Ford Motor Company's alternative motion for a new trial is likewise reversed, and the cause is remanded with directions to the trial court to re-instate the jury's verdict and enter judgment thereon in the sum of $7,606.44, together with interest thereon at the rate of 6% per annum from December 12, 1961.

All concur.