**MITCHELL ENGINEERING COMPANY, A DIVISION OF CECO CORPORATION, Respondent,**

v.

**SUMMIT REALTY COMPANY, INC., Trans-Missouri Builders, Inc., Larry W. Fink and Commerce Mortgage Company, a corporation, Appellants.**

**No. WD 33505.**

Missouri Court of Appeals, Western District.

Dec. 21, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Feb. 8, 1983.

Application to Transfer Denied March 29, 1983.

Gordon R. Gaebler of Svoboda & Gaebler, P.C., Kansas City, for appellant Summit Realty Co.

Ronald R. McMillin of Carson, Monaco, Coil, Riley & McMillin, P.C., Jefferson City, for respondent.

Before MANFORD, P.J., and WASSER-STROM and KENNEDY, JJ.

MANFORD, Presiding Judge.

Mitchell Engineering Company (plaintiff and hereinafter Mitchell) instituted this action in two counts. Count I sought enforcement of a mechanic's lien against land owned by Summit Realty Company (defendant and hereinafter Summit). Count II sought recovery of the balance due upon a construction contract from Trans-Missouri Builders (defendant and hereinafter Trans-Missouri). Two other parties were named as having an interest in the land. These parties were Larry W. Fink as trustee, and Commerce Mortgage Company as cestui que trust, under a deed of trust upon Summit's land. Fink and Commerce filed a joint answer in which they declared, "these defendants deny, as of the date of this answer, they have any interest in the property referred to in plaintiff's petition." Neither Fink nor Commerce actively participated in the trial of this cause. Further, there was no claimed interest by Fink or Commerce following the date of the filing of their joint answer, nor did they file a brief or otherwise participate in this appeal.

Trans-Missouri and Summit entered into a construction contract for the building of Summit Plaza Center in Holts Summit, Missouri. This contract was under date of May 22, 1978 and was finalized on August 29, 1978, upon the proposal of Mitchell to provide materials for a pre-fabricated 28,000 square foot building. The total contract price for the building was $75,838.12. There was then a change order and taxes applied to the contract price. Trans-Missouri made a down-payment of $7,828.12, leaving a net balance of $68,551.97. Most of the materials necessary to erect the building were shipped in several loads on October 3rd and 4th, 1978. These first loads included an invoice billing for the entire contract price. Subsequent shipments of shorted or replacement items allegedly took place on October 12, 1978, November 14, 1978, December 18, 1978 and January 4, 1979. Demands for payment by Mitchell were made on December 7, 1978 and February 1, 1979, but nothing was paid in addition to the down-payment. On February 8, 1979, Mitchell filed notices of its intention to file a mechanic's lien on Summit's property. These notices were served upon Summit, Trans-Missouri, Commerce Mortgage and the Chicago Title Insurance Company. On March 8, 1979, Mitchell filed its lien statement with the Callaway County Recorder, and on March 21, 1979, filed its lien statement with the Callaway County Circuit Clerk. On March 26, 1979, Mitchell filed its two-count petition in this cause. On April 28, 1980, Summit moved for summary judgment on the basis that Mitchell's lien statement lacked sufficient itemization to constitute a just and true account as required by § 429.080, RSMo 1978. On July 15, 1980, the trial court sustained Summit's motion and entered summary judgment in Summit's favor. Mitchell appealed that ruling and on June 16, 1981, this court reversed the trial court and remanded the

case for further proceedings. *Mitchell Engineering Company v. Summit Realty Co.,* 620 S.W.2d 27 (Mo.App.1981). In that ruling, this court characterized Mitchell as a sub-contractor and further held, relative to the sufficiency of Mitchell's lien statement:

"The obligation of the sub-contractor is to 'include in his lien account an itemized statement of the labor and materials furnished.' *Mississippi Woodworking Company v. Maher,* 273 S.W.2d 753, 756 (Mo.App.1954). The purpose of the lien statement has been often quoted from *Wadsworth Homes, Inc. v. Woodridge Corporation,* 358 S.W.2d 288, 291[2] (Mo.App. 1962). Briefly paraphrased, this purpose is to allow land owners and others to investigate to determine if the materials actually went into the building and whether they were lienable items and whether the amount charged is proper.

The statement in this case was sufficient to meet the obligation cast upon Mitchell. From the statement it could be ascertained that Mitchell supplied the material for three of its prefabricated steel buildings with the dimension of the buildings and the manner in which they were to be joined to form one large building. The statement specified those materials not to be furnished by Mitchell.

The trial court erroneously concluded that the lien statement was insufficient. The judgment is reversed and this cause is remanded for further proceedings." *Mitchell* at 29.

On remand, this cause was retried to the court on October 29, 1981. On December 24, 1981, the trial court entered its findings of fact, conclusions of law and judgment. This present appeal followed.

Five points are presented, which in summary charge the trial court with error because (1) Mitchell's petition failed to state a cause of action because it, in turn, failed to allege compliance with § 429.012, RSMo 1978, which constitutes a condition precedent to the creation, existence, or validity of a mechanic's lien; (2) in holding Trans-Missouri was an agent of Summit because there was no competent evidence to support

such theory and the court erred in receiving evidence upon that theory and on the basis that such evidence was an admission; (3) in finding Mitchell's lien was timely filed and that the lien complied with § 429.080 because there was no evidence that the materials were incorporated into the improvement (building); (4) in ruling that Mitchell had a valid lien under a subcontractor theory because Mitchell did not plead or prove a lien under such theory; and (5) in concluding that Summit had waived its defenses by its pursuit of summary judgment for the reason that no competent evidence was offered or received.

Under point (1), Summit argues, in substance, that Mitchell failed to plead and prove compliance with § 429.012, RSMo 1978, which requires provision of a written notice to the property owner subject to the claimed lien. Summit further argues that Mitchell pursued its claim on the theory that Mitchell contracted with Trans-Missouri while the latter was acting as Summit's agent. Mitchell counters by claiming status as a subcontractor, which if established, relieves Mitchell of the duty to supply Summit with written notice prescribed by § 429.012.

Review of Mitchell's petition reveals no explicit language claiming status as a subcontractor. However, the petition does refer to Trans-Missouri as a contractor and as agent of Summit. Summit seizes upon this and argues that Mitchell could not therefore avail itself of a subcontractor's status because it did not plead or prove a lien upon that theory, and further, there was no competent evidence to support the trial court's finding of agency between Summit and Trans-Missouri. Summit further argues that since subcontractor status was neither pleaded nor proven, such status would be inconsistent with Mitchell's claim that Trans-Missouri was Summit's agent because the establishment of subcontractor status and assessment of damages on a reasonable value basis would be proper only upon a theory of quantum meruit or implied contract.

In addressing this issue, it first needs to be pointed out that this court, in *Mitchell,* treated Mitchell as a subcontractor. If that recognition is found to be binding herein, Summit's contention that Mitchell did not comply with the prescribed notice provision (§ 429.012) is obviated.

 Evaluation of the subcontractor issue necessitates a survey of the purpose and nature of our mechanic's lien law. Its overall purpose is to give security to mechanics and materialmen for labor and material furnished in the improvement of an owner's property. It is remedial in nature and should be construed as favorable to those persons as its terms will permit. *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.,* 513 S.W.2d 365 (Mo.banc 1974); *Paradise Homes, Inc. v. Helton,* 631 S.W.2d 51 (Mo. App.1981). Although such liberal or favorable statutory construction does not relieve the lien claimant of reasonable and substantial compliance with statutory requirements, *Farmington Bldg., Etc. v. L.D. Pyatt Const.,* 627 S.W.2d 648 (Mo.App.1981), a petition to enforce a mechanic's lien is favorably construed and given the benefit of every reasonable and fair intentment. *Yamnitz v. Polytech, Inc.,* 586 S.W.2d 76, 84 (Mo.App.1979). In *Otte v. McAuliffe,* 441 S.W.2d 733 (Mo.App.1969), it was observed that a contractor's petition to enforce a lien gave the lien claimant status to enforce the lien even though the petition did not "set out the terms of the contract, the amount to be paid under it, the obligations of plaintiff, or even what 'improvements' plaintiff was to construct." *Otte* at 736.

In *Yamnitz,* the trial court held the petition insufficient because it failed to allege ultimate facts showing the timely filing of the lien statement with the circuit clerk. On review, that court stated:

"Section 429.180, RSMo 1969, provides that the petition for a mechanic's lien 'shall allege the facts necessary for securing a lien' under Chapter 429. One such requirement, found in § 429.080, is that an original contractor such as plaintiff must file a just and true account of his demand within six months after the indebtedness accrued, i.e., the day on which the last work was done. *J.R. Meade Co. v. Forward Construction Co.,* 526 S.W.2d 21, 28 (Mo.App.1975). Plaintiff's petition alleged that construction was completed 'on or about ＿＿＿＿＿ 1974', that final written demand for payment was made of defendant on April 18, 1974, and that the lien statement was filed with the clerk of the Gasconade County Circuit Court on June 21, 1974."

After reciting the general principle that the mechanic's lien petitions are to be liberally construed, the court in *Yamnitz,* at 84, further held:

"In light of the above principles, we believe that plaintiff's petition by necessary implication stated facts sufficient to satisfy § 429.180. Plaintiff apparently left the exact date of completion blank on the petition due to some uncertainty on the question, intending but failing to supply it at a later time. However, any date in 1974 before June 21, 1974, the date on which plaintiff filed the lien, necessarily was within six months of that filing date, as required by § 429.080."

In the instant case, the trial court entered its conclusion of law no. 4, characterizing Mitchell as a "materialman and subcontractor within the meaning of Chapter 429 of the Revised Statutes of Missouri." Summit challenges this conclusion, asserting, "this cause at all times proceeded on plaintiff's petition alleging its contractual relationship with Summit by reason of the agency allegedly created between Summit and Trans-Missouri Builders." Summit further argues that the trial court could not find that Mitchell was a subcontractor because Mitchell "did not amend its pleadings to proceed on a theory that it was a subcontractor."

Our research has failed to reveal any decision within our own state upon this precise question in the context of a petition for enforcement of a mechanic's lien, and this has led to the examination of factually similar cases from other jurisdictions which we have found instructive.

In *Viyella v. Jackson,* 347 So.2d 830 (Fla. App.1977), a laborer engaged in the business of installing terrazzo floors brought suit which in part sought enforcement of a mechanic's lien for labor and material furnished. Similar to the instant case, the court was faced with the contention that the lien claimant was barred from foreclosure of the lien because he failed to file an affidavit with the property owner. In speaking to that precise question and to the broader issue of whether the filed complaint contained sufficient allegations, the Florida Court ruled at 832:

"As for appellants' second contention, concerning the filing of an affidavit five days before instituting suit to enforce a lien, we note that said requirement applies only to contractors, and not sub-contractors. *Art Berman Concrete, Inc. v. Sey Construction Corp.,* 247 So.2d 791 (Fla.3d DCA 1971). Reading paragraphs three and four of appellee's complaint, it would appear that there were sufficient allegations contained therein to reasonably conclude that appellee was a subcontractor. Paragraph three of count I alleged that appellants, Julio and Sylvia Viyella entered into a construction contract with Julio A. Viyella, Inc. Paragraph four alleged that Julio A. Viyella, Inc., then contracted with appellee to install terrazzo floors on the property to be constructed by Viyella, Inc., and owned by appellants, Julio and Sylvia Viyella.

Therefore, taking the well pled allegations as true, we hold that appellee's complaint stated a valid claim for relief and affirm the order of the trial court denying appellants' motion to dismiss the complaint."

In yet another jurisdiction, the Delaware Court in *Erect-Rite Construction Co., v. De-Chellis,* 193 A.2d 545 (Del.Sup.1963), a case wherein defendant-owners moved to dismiss the lien claimant's petition on the basis that the petition insufficiently alleged that materials furnished pursuant to a contract failed to specify whether the contract was with the owner, his agent, or the contractor. The court denied the owner's motion to dismiss, observing, upon review, that the statement of the claim, including the caption, annexed bill of particulars, the defendant's counterclaim and the plaintiff's answers to interrogatories made "it quite obvious that the Contract, referred to in the Statement of the Claim, with respect to the supplying of the materials, was between Plaintiff and those sued as the General Contractors." loc. cit. 550. The court further quoted from a case from our sister state of Pennsylvania regarding a liberalized policy such as our own courts recognize. The Delaware court quoted the following from *Intercoastal Lumber Distributors v. Derian,* 117 Pa.Super. 246, 178 A. 350, 351 (1935):

" ' "A pleading must be construed as an entirety, including the caption, and a count must be construed as a whole. Effect should be given to every part of the pleading, and all parts will, if the language permits, be so construed as to be consistent with each other." 49 C.J. 116. Although it is undoubtedly better practice to name the contractor in the body of the lien, it has long been a common practice to name both the owner and the contractor in the caption. We are of the opinion that the naming of Gustino Bros. as contractors in the caption was a sufficient notice to point the way to a successful inquiry by the owner as to the relationship of the contractor to the owner and the validity of the claim in that respect. "All the cases agree that a substantial compliance is sufficient, and this is shown to exist wherever enough appears, on the face of the statement, to point the way to successful inquiry. Adherence to the terms of the statute is indispensible, but the rule must not be pushed into such niceties as serve but to perplex and embarrass a remedy intended to be simple and summary, without in fact adding anything to the security of the parties having an interest in the building sought to be encumbered. Certainty to a common intent has, therefore, always been held to suffice." *Amer. Car & Foundry Co. v. Alexandria Water Co.,* 215 Pa. 520, 525, 526, 64 A. 683, 685.

Again, in *Calhoun v. Mahon,* 14 Pa. 56, 58, the Supreme Court said: "We must not be hypercritical, when scanning this species of lien, and estimating its sufficiency. Such a practice must necessarily defeat a very large majority of them; a result not to be desired where they furnish sufficient data to enable the parties subject to them, to ascertain all that is essential for them to know." It would be idle to suggest that the owner of this building, from an inspection of the paper filed, would not know the person alleged to be the contractor.'" *Erect-Rite* at 549–550. ·

Against the foregoing, it is concluded by this court that the petition herein is inartfully drafted and with more attention to its preparation, this entire question perhaps never would have arisen. Be that as it may, we observe from the petition a declaration by Mitchell of the materials furnished for a stated price which were used in the construction of buildings upon Summit's land. In addition, the petition alleges demand for payment and upon refusal, that Mitchell, with a view of availing itself of a lien, served notice upon Summit and Trans-Missouri on February 14, 1979, expressing Mitchell's intent to file a mechanic's lien. In addition, the petition alleges that on or about March 2, 1979, Mitchell in fact filed a statement of the mechanic's lien.

The foregoing elements of the petition have been weighed against the liberal construction and interpretation of this statute by our courts, *R.L. Sweet, Paradise, Yamnitz* and *Otte, supra,* coupled with the persuasive rationale expressed in *Erect-Rite, Calhoun* (quoted in *Erect-Rite*) and *Viyella, supra,* plus the characterization of Mitchell as a subcontractor by this court in *Mitchell, supra.*

In addition, it is important to reemphasize what this court declared previously in *Mitchell* in borrowing from and in paraphrasing the rule in *Woodworking* and *Wadsworth, supra.* This court ruled that "this purpose is to allow landowners and others to investigate to determine if the materials actually went into the building and whether they were lienable items and whether the amount charged is proper." *Mitchell* at 29. While it could be argued that the foregoing statement was directed to the lien statement, we hold the same rule and rationale has equal application to the petition herein.

■■■ Based on the foregoing, we conclude that the trial court did not err by its characterization of Mitchell as a material-man and subcontractor within our statute (conclusion of law above). Having reached that conclusion and thus having recognized Mitchell as a subcontractor, it follows that Mitchell's claim is not defeated by any failure to comply with the notice requirement prescribed by § 429.012 as contended by Summit and Trans-Missouri under point (1). The reasoning and conclusions under point (1) are equally applicable to point (4) presented above, which contends that Mitchell failed to plead and prove a lien under a subcontractor theory.

Points (1) and (4), for the reasons expressed above, are found to be without merit and are ruled against Summit and Trans-Missouri.

■■■ Under point (2), it is contended that the trial court erred in its finding that Trans-Missouri was an agent of Summit. It is argued that there was no competent evidence to support such theory and the trial court further erred "in receiving such evidence under Mitchell's theory that it was to be received as an admission."

What is contended is the trial court erred when it permitted the following statement from Mitchell's brief in *Mitchell, supra,* as an admission against interest or judicial admission against Summit. The brief, from which the following is extracted, was filed in the present proceedings. The statement reads, "For purposes of this appeal, the facts are as follows: Appellant Mitchell Engineering Company entered into an agreement with Trans-Missouri Builders, general contractor and agent for owner Summit Realty . . ."

A detailed analysis of the questioned evidence appears infra and it suffices in regard to disposition of point (2) that if ad-

missible, the foregoing is substantial to support the trial court's finding of agency. *Murphy v. Carron,* 536 S.W.2d 30 (Mo.banc 1976). Upon this court's conclusions under points (1) and (4) above, this issue is of little importance as regards final disposition of this appeal. Point (2) is found to be without merit and is ruled against Summit and Trans-Missouri.

Under point (3), it is contended that the trial court erred in its finding that Mitchell's lien was timely filed and complied with § 429.080 for the reason that no evidence was received on the issue of the incorporation of the materials into the improvement.

This particular point presents two obvious questions, i.e., did Mitchell file its lien within four months of the time the claimed indebtedness accrued as required by § 429.080, RSMo 1978? and did Mitchell prove the materials delivered were incorporated into the improvement, i.e., the building? A third question attends this point as well: Did Mitchell prove the reasonable value of the materials furnished? We will address all three questions in the disposition of point (3).

As to the first question above, the factual question presented is whether Mitchell made deliveries of the materials within four months prior to March 21, 1979, the filing deadline required by our statute (§ 429.080). Review of this question is limited by the rule in *Murphy v. Carron, supra,* in that a finding upon the question by the trial court will not be disturbed unless such finding is against the weight of the evidence, there is no substantial evidence to support it or it erroneously declares or applies the law. See also *Westinghouse Elec. Co. v. Vann Realty Co.,* 568 S.W.2d 777, 780 (Mo. banc 1978).

■ The notice of a mechanic's lien is an essential element of the enforcement of a lien and a lien claimant bears the burden of proving notice. *Structo Corp. v. Leverage Inv. Enterprises,* 613 S.W.2d 197, 201 (Mo. App.1981). Our statute (§ 429.080) requires a subcontractor to file, with the circuit clerk of the proper county, a just and true account of that claimed due within four months after accrual of the indebtedness. This requirement has been construed to mean that the lien must be filed within four months of the completion of the work. *General Fire Extinguisher Co. v. Schwartz Bros. Comm'n Co.,* 165 Mo. 171, 65 S.W. 318 (1901). It has been further determined that the phrase "after the indebtedness shall have accrued" means when materials supplied are finally furnished or those materials are finally installed in or upon the improvement (i.e., the building). *J.R. Meade Co. v. Forward Const. Co., supra.*

In the instant case, the trial court found the last shipment of materials from Mitchell took place on January 4, 1979. This shipment was materials shipped December 18, 1978 and actually received January 4, 1979.[1] Summit and Trans-Missouri dispute both the December 18, 1978 and January 4, 1979 date, contending the relevant dates were October 3rd and 4th, based upon an invoice sent to Trans-Missouri by Mitchell, which reflected the entire contract price.

It serves no purpose to set forth in detail the testimony on this issue. In summary, a witness for Mitchell was asked to identify a marked exhibit, which was a receipt for the January 4, 1979 delivery. Summit and Trans-Missouri objected on the basis of hearsay. A conference between opposing counsel and the court occurred. Counsel for Mitchell advised the court that this document was part of admitted facts. The court then ruled:

"I do not believe this admission comes from the transcript (i.e., transcript of prior proceedings) but rather from the adoption of the statement of facts by the Respondent (i.e., Summit) in the appeal and I do believe that date is mentioned as a statement of the party of the facts of this case. It is correct that he is testifying from hearsay and so far as that goes,

---

1. Either or both dates place the March 21, 1979 filing date within the statutory required four-month period.

I will sustain the objection. But, that is shown as an admitted fact."

The testimony continued and included verification of the receipt, that it had been signed by an authorized representative of Trans-Missouri, and that the receipt was for materials delivered and used in the building.

As noted under point (2) above, it was indicated that a more detailed discussion of the question would take place. It must be recalled that this cause was before the trial court previously. The trial court entered summary judgment for Summit and Trans-Missouri. Mitchell appealed and this court, as discussed above, reversed the trial court. In the appeal process, Mitchell filed its brief, setting forth as required by our rules, a statement of facts. Summit and Trans-Missouri, by brief, declared, "Although there appears to be an error in the numbering system employed in the supplemental legal file of Summit Realty Company, *the salient facts reported by Mitchell Engineering Company are clearly set forth, are undisputed and the apparent error will not adversely affect the outcome of this appeal.*" (Emphasis added)

It was the foregoing which served as the basis for the trial court's ruling that facts alleged in Mitchell's brief which were part of the evidence upon the second trial were admissible. The trial court ruled the facts were judicial admissions. Summit and Trans-Missouri on retrial and on this present appeal contend that their adoption of Mitchell's statement of facts in their prior brief could not, upon retrial, be judicially admitted against them in determining the question of the sufficiency of the lien notice because those facts were, by Summit and Trans-Missouri, assumed to be true only for the purpose of resolving the narrow issue presented by the summary judgment which served as the basis of the appeal in *Mitchell, supra.*

The basic question facing this court is whether an agreement (by way of an appeal brief) by Summit and Trans-Missouri to the statement of facts contained in Mitchell's appellate brief in the first appeal could be used as an admission in a second trial.

Summit and Trans-Missouri, on this present appeal, contend that "the assumption of facts upon appeal from a summary judgment is similar to the issue before the trial court on a motion to dismiss." It has been noted above that Summit and Trans-Missouri contend overall that the assumption of Mitchell's facts was for the purpose of determining the narrow issue of summary judgment.

Neither party provides this court with any authority on the issue, and research by this court has revealed none precisely on the question. The question is whether the agreement to or assumption of an opponent's statement of facts in the opponent's brief on a prior appeal and the facts agreed to or assumed are admissible as having been admitted for use and for purposes of a second trial.

Summit and Trans-Missouri, as noted, argue that the situation is similar to that when a trial court is confronted by a motion to dismiss. We are referred to *Helmkamp v. American Family Mutual Insurance Co.,* 407 S.W.2d 559, 565 (Mo.App.1966) for the rule that when a trial court is faced with a motion to dismiss, the court assumes the alleged facts without regard to what the findings might be on the facts upon which the issue is joined. We do not find the contention of Summit and Trans-Missouri either applicable or persuasive. In the case of a motion for judgment on the pleadings, the moving party admits, for *purposes of the motion,* the truth of all well-pleaded facts within the pleadings of the opposing party. *Madison Block Pharmacy v. U.S. Fidelity,* 620 S.W.2d 343, 345 (Mo.banc 1981). As noted in Madison, " '[t]he position of a party moving for judgment on the pleadings is similar to that of a movant on a motion to dismiss, i.e., assuming the facts pleaded by the opposite party to be true, these facts are nevertheless insufficient as a matter of law.' " See also *Cantor v. Union Mutual Life Ins. Co.,* 547 S.W.2d 220, 224 (Mo.App.1977).

In contrast with the foregoing and illustrative of the instant case, a motion for

summary judgment involves a determination by the trial court, from pleadings, depositions and affidavits properly before the court, that there exists no genuine material issues of fact and that the movant is entitled to judgment as a matter of law. *Gunning v. State Farm Mut. Auto Ins. Co.,* 598 S.W.2d 479 (Mo.App.1980). Hence, unlike a proceeding upon a motion to dismiss, proceedings upon motions for summary judgment inherently require determination of facts. The principal characteristic distinguishing a motion to dismiss and a motion for summary judgment is that in the latter, matters external or additional to the pleadings are presented and considered. *Ellis v. Jewish Hospital of St. Louis,* 581 S.W.2d 850 (Mo.App.1979) and Rule 55.27(a).

It has been held that denial of a summary judgment is an interlocutory order having no res judicata effect and does not prohibit a reviewing court from thereafter ruling differently on the same issue raised in a prior summary judgment. *Sentinel Woodtreating v. Cascade Development,* 599 S.W.2d 268, 271 (Mo.App.1980). This is not the situation presented by the instant proceedings. In this case, the court is faced with a subsequent appeal following a reversal of the trial court's original grant of summary judgment and a remand for further hearing, and finally a second direct appeal from the findings, conclusions and judgment for the lien claimant.

As noted, Summit and Trans-Missouri contend that their assumption of facts in Mitchell's brief from the first appeal does not reach the level of "judicial admission" for purposes of the second trial. Our research has failed to reveal any caselaw which explicitly permits or prohibits the use of a statement of facts in a prior appeal as an admission amounting to substantial evidence in support of a subsequent trial-court finding that a lien claimant has met its burden of proof as to compliance with our mechanic's lien statute.

On this appeal, Summit and Trans-Missouri assume that the statement of facts in the prior appeal was treated and applied on remand as a "judicial admission". Be-

cause of the use of terms employed by the trial court, it is perhaps understandable how such assumption occurred. In order to clarify this point further, it should be briefly noted how our courts have defined "judicial admissions." These have been held to be "a more or less formal act done in the course of judicial proceedings which waives or dispenses with the production of evidence and concedes for the purpose of litigation that a certain proposition is true." *Hewitt v. Masters,* 406 S.W.2d 60, 64 (Mo.1966). The rationale of such admissions is to act as a substitute for evidence and to obviate the need for evidence relative to the subject matter of the admission. *State Farm Mutual Auto Ins. Co. v. Worthington,* 405 F.2d 683, 686 (8th Cir.1968). The court in *Worthington* at 686, quoting from *Wigmore on Evidence* noted, "Judicial admissions are conclusive in their nature but that effect is confined to the cause in which they are made."

If the issue, as assumed by Summit and Trans-Missouri, is whether the trial court ruled that the assumption of the prior statement of facts was a binding judicial admission, then Summit and Trans-Missouri might have an arguable position. But the issue here is whether the trial court could recognize the prior statement of facts and assumption of those facts by Summit and Trans-Missouri as a basis for its finding of compliance, by Mitchell, with the mechanic's lien statute. The record is clear that the trial court herein treated the statement of facts and assumption of those facts by Summit and Trans-Missouri as an ordinary admission against interest by Summit and Trans-Missouri.

Our courts have distinguished explicitly between "judicial admissions" and ordinary admissions against interest. In *May v. May,* 294 S.W.2d 627, 634 (Mo.App.1956), this court held:

"A true judicial admission is an admission made in court or preparatory to trial, by a party or his attorney, which concedes for the purposes of that particular trial the truth of some alleged fact so that one party need offer no evidence to

prove it, and the other party ordinarily is not allowed to disprove it. It removes the proposition in question from the field of disputed issues in the particular case wherein it is made. It is a substitute for evidence in the sense that it does away with the need for evidence on that subject in that cause. 4 Wigmore on Evidence, 3rd Edition 49, Sec. 1065; *Maltz v. Jackoway-Katz Cap Co.*, 336 Mo. 1000, 82 S.W.2d 909; *Bohle v. Sternfels,* Mo.Sup., 261 S.W.2d 936; *Stockton v. Tester,* Mo. App. 273 S.W.2d 783. The true judicial admission is sharply distinguished from the ordinary or quasi admission, which is usually some form of self-contradiction and which is merely an item of evidence, available against the party on the same theory any self-contradiction is available against a witness. The person whose act or utterance it is may nonetheless proceed with his proof in denial of its correctness. It is merely an inconsistency which discredits, in greater or lesser degree, his present claim and his other evidence. It is to be considered along with the other evidence and circumstances of the case. Thus, the moment one seeks to use admissions made in other litigation, even though between the same parties, he must resort to them merely as ordinary or quasi admissions—i.e., ordinary statements or acts which now appear to tell against the party who made them or did them."

Any evidence which is logically probative, including admissions, is competent and admissible unless otherwise excluded by some policy rule or legal principle. An admission, in general, is a conscious, voluntary acknowledgement by a party of the existence of certain facts relevant to the cause of a party's adversary, a statement against interest, unfavorable or inconsistent with facts now claimed by a party making the statement. *Albertson v. Wabash R. Co.,* 363 Mo. 696, 253 S.W.2d 184, 189 (1952). Where a party admits to a material fact, relevant to an issue in a case, the same is competent against him as substantive evidence of the fact admitted and is entitled to considerable weight. *Creager*

*v. Chilson,* 453 S.W.2d 941, 943 (Mo.1970); *Deskin v. Brewer,* 590 S.W.2d 392 (Mo.App. 1979). For testimony or a statement by a party to be competent as an admission against interest, it is not required that it be a direct admission of the ultimate facts in issue, but it may be competent if it bears on an issue incidentally or circumstantially. *Coulter v. Michelin Tire Corp.,* 622 S.W.2d 421 (Mo.App.1981). *Deskin* at 399 points out that such evidence is admissible under a recognized exception to the hearsay rule and proof of such admission does not depend, for its admissibility, on conformance to any other exception to the hearsay rule.

The courts of our state have not been heretofore required to determine the question of the use of statements in briefs on prior appeals as admissions against interest. Reference to other sources, however, is found to be instructive and persuasive. Hence, statements in abandoned pleadings can be held admissible, *Bledsoe v. Northside Supply and Development Co.,* 429 S.W.2d 727 (Mo.1968), as well as stipulations, affidavits and petitions in prior lawsuits. *Berry v. Berry,* 620 S.W.2d 456 (Mo.App.1981); *Littell v. Bi-State Transit Development Agency,* 423 S.W.2d 34 (Mo.App.1967); *R-Way Furniture Company v. Powers Interiors, Inc.,* 456 S.W.2d 632 (Mo.App.1970); and *Grayson v. Pellmounter,* 308 S.W.2d 311 (Mo.App.1957). This approach has also been adopted regarding admissions against interest in "writings" held to be "analogous" to pleadings. See *Jacobs v. Bob Eldridge Construction Co.,* 393 S.W.2d 33, 41 (Mo.App.1965) (dealing with a "Report of Injury"). The propriety of treating agreed-to statements of facts on prior appeals as admissions is reinforced by language expressed by our state Supreme Court in *Williams v. Ford Motor Co.,* 454 S.W.2d 611, 615 (Mo.App.1970). The court, in *Williams,* while primarily concerned with the doctrine of "the law of the case", was faced with the plaintiff's argument that certain statements in the defendants' brief constituted admissions that the evidence at both trials was substantially the same. Following recitation of the statement, the court in *Wil-*

liams held: "Defendants' reply brief filed on this appeal does not deny that plaintiff's evidence was substantially the same at the second trial. *This and the above statements do constitute* admissions by defendants." (emphasis added)

We find no policy rule or legal principle which would otherwise exclude the challenged admissions herein. We further find that the adoption by Summit and Trans-Missouri of the facts set forth in Mitchell's brief was a conscious voluntary acknowledgement of the existence of certain facts. *Albertson, supra.* We further find that the facts were material, relevant to the issue in the case, and substantive in nature, which entitled the same to considerable weight. *Creager, supra.* We further find that it was not necessary that such facts had to be a direct admission of ultimate facts in issue to have been admissible. *Coulter, supra.* In addition, we hold that briefs filed in proceedings on appeal are to be accorded recognition as valid and acceptable sources of such admissions the same as pleadings, stipulations, affidavits and other writings. *Berry, Littell, Grayson* and *Jacobs, supra.* We find this to be in harmony with the ruling in *Williams,* but by this opinion, rule that the recognition and use thereof is not limited solely to the failure to deny that a party's evidence was "substantially the same at the second trial." The limitation prescribed by the court in *Williams* arose because of the particular circumstances of the *Williams* case. What we now decide and rule is that briefs from prior appellate proceedings are permissible sources of admissions against interest and as such, if not otherwise prohibited by policy or rule of law, are admissible as competent and substantial evidence in subsequent trials or hearings.

As noted, we have concluded that the trial court recognized and treated the prior statement of facts and the assumption of them by Summit and Trans-Missouri as sufficient admissions to constitute substantial evidence that Mitchell complied with the requirements of lien filing. These admissions, as reflected within Mitchell's prior

appeal brief and the prior appeal brief of Summit and Trans-Missouri (both of which were introduced at the second trial), clearly support the finding by the trial court that Mitchell complied with the time limit prescribed for filing within our mechanic's lien statute. We are limited in our review of that question by *Murphy v. Carron, supra,* and it is ruled that such finding was not against the weight of the evidence, the evidence was substantial to support it and the court neither declared nor applied the law erroneously. The answer to question number one above is that Mitchell filed its lien within four months of the time that the claimed indebtedness accrued, as required by § 429.080.

It remains for this court to address the two remaining questions. First, did Mitchell prove that the delivered materials were incorporated into the improvement, i.e., building? Summit and Trans-Missouri contend that the evidence upon this point was insufficient. It first must be noted that the "thrust" of the mechanic's lien statute is "to allow a lien for those materials which enter into the construction of the building and thereby become part of its value." *Farmington Bldg., Etc. v. L.D. Pyatt Const.,* 627 S.W.2d at 651, *supra.* While a lien claimant bears the burden of establishing that the materials sold actually entered into the construction of the building, the lien claimant is not required to prove that "every stick" was actually observed going into the structure. *Boyer Lumber, Inc. v. Blair,* 510 S.W.2d 738 (Mo. App.1974).

With these principles in mind, plus our limited review as prescribed by *Murphy v. Carron, supra,* it is found from the record, that Mitchell's plant manager testified that he visited the building location on January 31, 1979 and viewed the building. He testified that the items or materials supplied by Mitchell went into the building and that nothing was missing. In addition, a sales representative of Mitchell testified that he visited the location and observed that the materials supplied by Mitchell went into the building. The credit mana-

ger for Mitchell testified that no complaints were voiced concerning lack of materials in the erection of the building during his attempts to collect monies claimed due by Mitchell. In addition to its own separate acknowledgement as evidence upon the question, the testimony of the above witnesses compares favorably with that found in other decisional authority holding that evidence of delivery coupled with invoice documents amounted to substantial evidence in support of incorporation of materials into an improvement, i.e., building. *Stewart C. & M. Co. v. James H. Stanton Const. Co.,* 433 S.W.2d 76, 79 (Mo.App.1968); *Continental Electric Co. v. Ebco, Incorporated,* 365 S.W.2d 746, 752 (Mo.App.1963). It cannot be said that the trial court's finding that Mitchell proved that the materials were incorporated into the instant improvement was against the weight of the evidence, that there was no substantial evidence to support it or that such finding erroneously declared or applied the law. *Murphy v. Carron, supra.* The answer to question two above then is that Mitchell proved that the materials furnished were incorporated into the improvement.

The final question within point (3) is: Did Mitchell prove the reasonable value of the materials furnished? Summit and Trans-Missouri cites *Mississippi Woodworking v. Maher, supra,* for the proposition that a subcontractor not in direct privity with the owner must recover in quantum meruit based upon the reasonable value of the materials furnished, and may not establish such value by reliance upon the contract price. Summit and Trans-Missouri contend that the "only inquiries by counsel for Mitchell were directed to contract price as being fair and reasonable" and when "Mitchell attempted to adduce testimony on the question of reasonable value of the materials and labor, the court sustained appellant's objection on the ground that such testimony was beyond the scope of the theory advanced in respondent's pleadings."

■ Where a mechanic's lien is asserted by a subcontractor against the property of the landowner, there is normally no contractual relationship between the subcontractor and the owner and "[i]t is only by reason of the mechanic's lien statute that the property may be subjected to the payment of the lien claim. In this situation, the lien is not necessarily for the contract price but is only for the reasonable value of the labor and materials furnished." *Mississippi* at 755, quoted with approval in *Mid-West Engineering and Const. Co. v. Campagna,* 421 S.W.2d 229, 234 (Mo.1967). For recovery upon quantum meruit, a lien claimant must plead and prove that he provided the defending party with materials or service at the request of or with the acquiescence of the defending party, that those materials or service had a certain reasonable value and that despite demand for payment, there has been a failure to pay the reasonable value therefor. *Berra v. Bieg Plumbing Co., Inc.,* 584 S.W.2d 116, 118 (Mo.App.1979); *McDowell v. Miller,* 557 S.W.2d 266 (Mo.App.1977). In contrast, where an express contract is pleaded and the amount of compensation fixed, evidence of reasonable value is inadmissible. *Cotton v. 71–Highway Mini-Warehouse,* 614 S.W.2d 304, 306–07 (Mo.App.1981). However, (as in the case herein) "[i]n fact a pleading that sounds in both express contract and quantum meruit will permit recovery on either theory warranted by the evidence. Allegations that are unnecessary to the cause upon which recovery is had will be treated as surplusage." *McDowell v. Schuette,* 610 S.W.2d 29, 37 (Mo.App.1981); *McDowell v. Miller* at 272. The existence of an express contract will not prevent a party from suing in quantum meruit or from offering the contract as prima facie evidence of reasonable value. *Bodde v. Burnham,* 588 S.W.2d 516 (Mo.App.1979); *St. Louis Testing Lab., Inc. v. Mississippi Val. Struc. Steel Co.,* 254 F.Supp. 47 (E.D.Mo.1966), affirmed 375 F.2d 565 (8th Cir.1967). The limitation in such a case is that the lien claimant may not recover in excess of the contract price. *Curators, Etc. v. Neb. Prestressed Concrete,* 526 S.W.2d 903 (Mo.App.1975).

■ This final issue arose during the testimony of the estimator for Mitchell. In

summary, the witness was first asked if the prices charged for the materials were fair and reasonable. The witness answered affirmatively and Summit and Trans-Missouri objected. Before any ruling by the trial court, this witness was asked if the contract price was fair and reasonable, to which he responded "yes" and no objection was entered. The plant manager for Mitchell then testified. He was asked to identify, as an exhibit, an invoice for the materials furnished. He testified without objection that the invoice reflected the total contract price. He was then asked if the price charged for the materials furnished was fair and reasonable. This question brought an objection from Summit and Trans-Missouri. The objection was sustained by the trial court on the ground that such testimony would be beyond the scope of the theory advanced in Mitchell's pleadings. The ruling on the objection by the trial court was error because Mitchell's pleadings, as observed above, pleaded a subcontractor theory as well as a theory upon express contract. This testimony, admissible on other grounds (i.e., express contract) was admissible as being within the alternative theory (i.e., subcontractor). Summit and Trans-Missouri cannot avail themselves of this error, however, because the error adversely affected Mitchell, not Summit or Trans-Missouri, and they suffered no prejudice from the erroneous ruling. Hence, it is not reversible error. *Kennedy v. Tallent,* 492 S.W.2d 33 (Mo.App.1973).

■ In addition to the testimony concerning reasonable value, this record contains invoices which set out the materials provided in the contract price. This evidence was contested on the ground of its admissibility only. It was prima facie evidence of reasonable value and constituted substantial evidence to support the trial court's finding as to the value of the material. It cannot be concluded that the finding upon value by the trial court was against the weight of the evidence, nor that it lacked substantial evidence or that it erroneously declared or applied the law. *Murphy v. Carron, supra;* see also, *Zeller v. Janssen,* 569 S.W.2d 5 (Mo.App.1978); *Otte,*

*supra,* at 736–37 and Rule 73.01. The answer to question three above then is that Mitchell proved the reasonable value of the materials furnished. Thus, point (3) in its entirety is found to be without merit and is ruled against Summit and Trans-Missouri.

Under their final point (5), Summit and Trans-Missouri charge that the trial court erred in its finding that Summit and Trans-Missouri waived defenses by the pursuit of summary judgment for the reason that no competent evidence was offered or received.

Summit and Trans-Missouri attack the following conclusions of law entered by the trial court:

"3. Defendant Summit Realty, through its attorney, has admitted on page 2 of plaintiff's Exhibit No. 4 that defendant Summit Realty's only challenge to plaintiff's mechanic's lien statement is the sufficiency of the itemization of the materials supplied." * * *

"11. Defendant Summit Realty has waived any other deficiency, if any, by its failure to raise the issue in its pleadings or its motion for summary judgment."

This issue arose over the introduction of an exhibit which was a portion of the transcript of the argument by Summit and Trans-Missouri in support of the motion for summary judgment. The disputed portion, which is a comment by counsel for Summit, reads as follows:

"In this particular case we have one major attack against the mechanics lien statement, and only one, and that is that it is not sufficiently itemized as to third parties and as to the owner of real estate."

This court has no explanation as to why these two conclusions were entered by the trial court since they were not necessary to the final disposition of this cause. They were entered nonetheless and since challenged on this appeal, this court will briefly discuss the issue.

■ The only argument offered by Summit and Trans-Missouri is that by the above-quoted statement, there was no ad-

mission by Summit or Trans-Missouri and no abandonment of any defenses by them either. Both Summit and Trans-Missouri fail to allege or point out any prejudice to either of them as a result of these conclusions. We find no prejudice either and regard these conclusions as both surplusage and harmless. It is evident, upon the whole of the record, that neither Summit nor Trans-Missouri were prevented from presenting any defenses they deemed available, and in fact the record discloses a vigorous defense throughout in resisting the lien claim by Mitchell. In this final argument, Summit and Trans-Missouri refer this court to their contentions under point (2) concerning the issue of admissions. It serves no purpose to restate the resolution of that issue since this opinion covers the question under points (2) and (3) above. This last point fails to persuade us that either Summit or Trans-Missouri suffered any prejudice from either of these conclusions by the trial court. Point (5) is found to be without merit and is ruled against Summit and Trans-Missouri.

For the reasons set forth herein, the judgment is in all respects affirmed.

KENNEDY, J., concurs in separate concurring opinion.

WASSERSTROM, J., concurs in separate concurring opinion of KENNEDY, J.

KENNEDY, Judge, concurring.

I concur in the result reached by the principal opinion, but do not want to be understood as agreeing to the proposition that respondent's adoption of an appellant's statement of facts in an appellate brief is an admission of each and every fact included in the statement of facts. He admits for the purpose of the appeal that the record showed the facts stated by the appellant, but he does not admit the truth of those facts.

That part of the opinion is actually unnecessary. The so-called "admission" was used to prove that the materials were delivered and incorporated into the structure within the four months preceding the filing of the lien, § 429.080, RSMo 1978. Appellant's point specifically is, as stated in his brief, that "no evidence was received on the issue of the incorporation of the materials into the improvement". There was such evidence, however, in the testimony of Mitchell's operations manager, who visited the site on January 31 and who testified that the building materials supplied by Mitchell had all been incorporated into the building on that date. It is not necessary to resort to any admission for that fact.

As to the *date* of incorporation (to bring that fact within the four-month period preceding the filing of the lien), that is another matter. It is frustrating to search this record for inferential proof of that which was subject to direct and positive proof. There was proof of *shipment* of two pieces of flashing as late as December 18. There is no direct proof of its receipt, but I conclude it is sufficient that Mitchell's operations manager inspected the building on January 31 and testified: "I don't know of anything that is missing. They got the entire building package, and from looking at the building when I saw it, it is all there." Thus it may be inferred that the materials shipped on December 18 were received by the purchaser and incorporated into the building between December 18 and January 31. (The January 4 receipt referred to in the principal opinion, apparently for the goods shipped on December 18, is omitted from the exhibits filed here by respondent. It should have been included in the record, although excluded from evidence by the trial court, Supreme Court Rule 73.01(c)(3).) Proof of incorporation of the materials between the dates of December 18 and January 31 bring the filing of the lien within the four-month period of § 429.080, and supports the trial court's judgment.

The statement from the brief was also used to prove Trans-Missouri was agent for Summit in making the contract with Mitchell. The court found, however, that Mitchell was a subcontractor (as it plainly was). Its contract was with Trans-Missouri, the contractor, not with Summit, the owner.

The proof and finding of Trans-Missouri's agency would be necessary only if Mitchell were claiming that he was an original contractor. The proof of Trans-Missouri's agency for Summit was superfluous, and so is that part of the opinion which holds that the fact was admitted by Mitchell when it adopted Summit's statement of facts in its brief in the earlier appeal. It is true that the trial court in this case did make a specific finding that Trans-Missouri was Summit's agent, but that finding is inconsistent with the rest of the findings and with the judgment, adds nothing to the findings or the judgment, may be treated as surplusage and ignored.